**KIMCO LEASING, INC., Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

Nos. 49T10–9211–TA–00092, 02T10–9402–TA–00079.

Tax Court of Indiana.

Oct. 18, 1995.

Robert Owen Vegeler, Beers, Mallers, Backs & Salin, Fort Wayne, for petitioner.

Pamela Carter, Attorney General of Indiana, Marilyn S. Meighen, Deputy Attorney General, Indianapolis, for respondent.

FISHER, Judge.

Kimco Leasing, Inc. (Kimco) appeals two final determinations of the State Board of Tax Commissioners (the State Board), one assessing Kimco's business personal property for the March 1, 1991, assessment date, the other assessing Kimco's business personal property for the March 1, 1992 assessment date.

### ISSUES

I. Whether Kimco is the "owner" of leased equipment for purposes of taxation under IND.CODE 6–1.1–2–4(a).

II. Whether Kimco filed business personal property tax returns in certain counties for the March 1, 1991, assessment.

III. Whether the personal property taxes imposed on Kimco for the March 1, 1992, assessment by Delaware, Fayette, Floyd, Fulton, Kosciusko, Lake, Madison, Randolph, and Wells counties, and Decatur and Washington Townships in Marion county, were illegal as a matter of law.

IV. Whether Kimco's leases are "capital leases" or "operating leases" under 50 I.A.C. 4.2–8.

**FACTS AND PROCEDURAL HISTORY**

Kimco is an Indiana corporation with its principal office in Fort Wayne. It is in the business of third-party commercial equipment leasing. Accordingly, Kimco purchases equipment from equipment suppliers and leases it to others pursuant to contracts called "Equipment Lease Agreements." Kimco has entered into contracts for the lease of equipment such as photocopiers, choir robes, x-ray machines for dental offices, and the sound system in the Allen County Court House. While Kimco holds legal title to the leased equipment, its lessees enjoy possession and use of the equipment so long as they comply with the terms of their lease agreements. Further details of Kimco's lease agreements are set forth in *Kimco Leasing, Inc. v. State Board of Tax Commissioners* (1993), Ind.Tax, 622 N.E.2d 590, 592 (*Kimco I*) and need not be repeated here.

A. The March 1, 1990, Assessment

At issue are Kimco's business personal property taxes for the March 1, 1991, and March 1, 1992, assessments. To fully understand this case, however, it is necessary to look back to the March 1, 1990, assessment.[1]

For the March 1, 1990, assessment, Kimco filed a business personal property tax return with the Allen County Assessor. After a review of Kimco's return and an audit of its books and records, a State Board field officer found that Kimco owned business personal property (various items of leased equipment) in other tax districts. The field officer also found that neither Kimco nor its lessees had filed tax returns reporting the leased equipment. Consequently, the State Board assessed Kimco for the unreported leased equipment pursuant to I.C. 6–1.1–2–4(a), which provides that "[t]he *owner* of any tangible property on the assessment date of a year is liable for the taxes imposed for that year on the property." (Emphasis added).

Kimco protested the assessment primarily on two grounds. First, Kimco argued that it was not the "owner" of the leased equipment and, therefore, could not be taxed under I.C. 6–1.1–2–4(a). To support its posi-

---

**1.** Kimco incorporated by reference into the cases before the court today all of the evidence and testimony presented in *Kimco I*, both at the State Board level and before this court.

tion, Kimco cited IND.CODE 6–1.1–1–9, which defines the term "owner" as it is used throughout IND.CODE 6–1.1. Kimco acknowledged that I.C. 6–1.1–1–9(b) establishes a general rule that the holder of legal title to personal property is the "owner" of that property, but insisted that the leased equipment fell within an exception to the general rule. Specifically, Kimco argued that the leased equipment fell within the parameters of I.C. 6–1.1–1–9(e), which provides that "[w]hen personal property is security for a debt and the debtor is in possession of the property, the *debtor is the owner* of that property." (Emphasis added). *See also* 50 I.A.C. 4.2–2–4. Accordingly, Kimco argued that the State Board was required to assess Kimco's lessees. Second, Kimco argued that even if it was the "owner" of the leased equipment for purposes of taxation, its leases were "capital leases" as defined by 50 I.A.C. 4.2–8–2; therefore, any taxes due were the primary responsibility of its lessees.[2]

The State Board conducted a hearing to consider Kimco's protest and, thereafter, found that it could not "conclude that the lease agreements between KIMCO and its customers [were] intended for security, rather than being true leases." *State Board's 1990 Final Order* ¶ 6 at 11. It further found that there was insufficient information in the record to classify Kimco's leases as "capital leases." *State Board's 1990 Final Order* ¶ 9 at 13. Accordingly, the State Board determined that Kimco was taxable as the "owner" of the leased equipment, *State Board's 1990 Final Order* ¶ 7 at 11, and that Kimco's leases were "operating leases" under 50 I.A.C. 4.2–8–3, *State Board's 1990 Final Order* ¶ 9 at 13.

Kimco appealed the State Board's final determination to this court on November 6, 1991. This court upheld the State Board's final determination on October 15, 1993. *Kimco I*, 622 N.E.2d 590.

### B. The March 1, 1991, Assessment

For the March 1, 1991, assessment, Kimco filed business personal property tax returns with various local officials. After a review of Kimco's returns and an audit of its books and records, a State Board field officer found at least two problems. First, the field officer found that Kimco had not submitted returns in *all* of the tax districts in which it was required to file. Second, the field officer found that where Kimco had submitted returns, it submitted them to the wrong assessing officials. The law required that Kimco submit its returns to the assessors of every *township* in which leased equipment was located.[3] Kimco, however, had filed its returns with the assessors of *counties* in which leased equipment was located. As a result of these findings, the State Board assessed Kimco for the unreported leased equipment.

Kimco protested the assessment primarily on three grounds. First, Kimco protested that it was not the "owner" of the leased equipment for purposes of taxation. Second, Kimco protested that even if it was the "owner" of the leased equipment for purposes of taxation, its leases were "capital leases" and its lessees were primarily responsible for any taxes imposed. Third, Kimco protested that it had filed business personal property tax returns in all of the taxing districts in which it was required to file.

The State Board was not persuaded by Kimco's first two arguments. *See State Board's 1991 Final Order* ¶ 3 at 8. With respect to Kimco's third argument, however, the State Board determined that Kimco would not be assessed for the unreported leased equipment if: 1) Kimco supplied proof that it had filed returns in the counties in question,[4] 2) Kimco supplied copies of the returns it claimed had been filed,[5] or 3) Kimco's lessees had reported and paid taxes on

---

2. When a lease is a "capital lease," the lessee is primarily responsible for the property taxes on the leased equipment, and when a lease is an "operating lease," the lessor is primarily liable for the property taxes. 50 I.A.C. 4.2–8–5; *see also Empire Gas of Rochester, Inc. v. State of Indiana* (1985), Ind.App., 486 N.E.2d 1036.

3. *See* IND.CODE 6–1.1–3–7 prior to amendment by P.L.54–1991, Sec. 1, effective Jan. 1, 1992.

4. The State Board was willing to overlook the fact that Kimco filed its returns with the county assessors, rather than with the township assessors as required by law, if Kimco could prove that it truly filed with the county assessors.

5. The State Board was willing to overlook the fact that Kimco could not provide proof that it actually filed the returns in question if it could at least prove that it had prepared the returns.

the leased equipment. Kimco could not produce certified mailing receipts, file stamped copies of its returns, or even copies of the returns it claimed to have filed. Further, a survey conducted by the State Board showed that Kimco's lessees had not reported and paid taxes on the leased equipment. As a result, the State Board assessed Kimco for the unreported leased equipment. *State Board's 1991 Final Order* ¶ 13 at 11. Kimco appealed the State Board's final determination to this court on November 10, 1992 (*Kimco II*).

## C. The March 1, 1992, Assessment

For the March 1, 1992, assessment date, Kimco filed consolidated business personal property tax returns in counties where leased equipment was located.[6] With its returns, Kimco included computer print-outs which contained information about each of its outstanding leases, including the "lease number," the "company address," and the "lease cost." Many of the counties accepted Kimco's returns together with the computer print-outs. Nine counties[7] and two townships,[8] however, found that Kimco's returns and computer print-outs did not comply with the law and/or were ambiguous or confusing. Those nine counties and two townships assessed Kimco business personal property taxes on the leased equipment located within their jurisdictions.

Kimco protested the assessments alleging that the taxes imposed were illegal as a matter of law because Kimco was not the "owner" of the leased equipment for purposes of taxation and its leases were "capital leases" under 50 I.A.C. 4.2–8–2. *See* IND. CODE 6–1.1–15–12. After considering Kimco's protest, the State Board noted that its "determination relative to the March 1, 1990 assessment of Kimco, including the holding that Kimco was the owner of the leased property, was ... upheld by the Indiana Tax Court." *State Board's 1992 Final Order* ¶ 6

at 6. The State Board also noted that its "determination relative to the March 1, 1990, assessment of Kimco, including the holding that the property was the subject of operating leases, was subsequently upheld by the Indiana Tax Court." *State Board's 1992 Final Order* ¶ 11 at 7. The State Board then determined, for a third time, that Kimco was the "owner" of the equipment at issue for purposes of taxation and that its leases were "operating leases" as defined by 50 I.A.C. 4.2–8–2. *State Board's 1992 Final Order.* Kimco appealed the State Board's final determination to this court on February 23, 1994 (*Kimco III*). Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

"The State Board is accorded great deference when acting within the scope of its authority." *Kimco I*, 622 N.E.2d at 592. Accordingly, the court will reverse a final determination issued by the State Board only if it is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary or capricious. *Id.* As the taxpayer in this case, Kimco bears the burden to prove that the State Board's final determinations should be reversed. *Id.*

## DISCUSSION AND ANALYSIS

### I

In *Kimco I*, this court was asked to determine whether the State Board erred in taxing Kimco as the "owner" of various items of leased equipment under I.C. 6–1.1–2–4(a). *Kimco I*, 622 N.E.2d at 592. In order to make that determination, the court found it necessary to first decide whether Kimco's leases were true leases or security interests under I.C. 6–1.1–1–9(e). *Id.* at 592. For guidance, the court looked to the definition of "security interest" in IND.CODE 26–1–1–

---

6. Effective January 1, 1992, I.C. 6–1.1–3–7 was amended to allow the filing of a consolidated business personal property tax return with the *county assessor* when the "taxpayer has personal property subject to assessment in more than one (1) township in a county and the total assessed value of the personal property in the county exceeds five thousand dollars ($5,000)." I.C. 6–1.1–3–7(d) (added by P.L.54–1991, Sec. 1) (emphasis added).

7. The nine (9) counties are Delaware, Fayette, Floyd, Fulton, Kosciusko, Lake, Madison, Randolph, and Wells counties.

8. The two (2) townships are Decatur Township and Washington Township, both in Marion County.

201(37)[9] and the Indiana case law applying it. *Id.* at 593. The court recognized that I.C. 26–1–1–201(37) had been amended effective July 1, 1991, but determined that the amendment did not effect *Kimco I* because it involved leases that were written before the effective date of the amendment. *Id.* at 593, n. 1.[10]

Today the court is asked, once again, to determine whether the State Board erred in taxing Kimco as the "owner" of various items of leased equipment under I.C. 6–1.1–2–4(a). In making this determination, it is again necessary to decide whether Kimco's leases are true leases or security interests under I.C. 6–1.1–1–9(e), and just as in *Kimco I,* the court looks to the definition of "security interest" provided in I.C. 26–1–1–201(37) and the case law applying it for guidance. The case before the court today, however, differs from *Kimco I* in that it involves leases written both before and after the effective date of the amended version of I.C. 26–1–1–201(37). The court will therefore examine leases written before July 1, 1991, under I.C. 26–1–1–201(37) as it existed prior to its amendment and leases written after July 1, 1991, under the amended version of I.C. 26–1–1–201(37).

A. Leases Written Before July 1, 1991

In *Kimco I,* this court found that Kimco's leases did not satisfy either the "nominal consideration" or "economic realities" tests. Kimco now attempts via "new" evidence and legal argument to prove that its leases do, in fact, satisfy the "nominal consideration" and "economic realities" tests.

■ Under the "nominal consideration" test, a lease creates a security interest as a matter of law if the purchase option price stated in the lease is nominal in relation to the fair market value of the property at the time the purchase option is to be exercised. *Kimco I,* 622 N.E.2d at 593; *Morris v. Lyons Capitol Resources, Inc.* (1987), Ind. App., 510 N.E.2d 221, 223; *McEntire v. Indiana National Bank* (1984), Ind.App., 471 N.E.2d 1216, 1221; *Matter of Marhoefer Packing Co.* (1982), 7th Cir., 674 F.2d 1139, 1142–1145. In *Kimco I,* there was no evidence "of what the fair market value of the equipment would have been at the time the purchase option was to be exercised." *Kimco I,* 622 N.E.2d at 593. As a result, the court could not determine "whether the purchase option [was] nominal as a matter of law." *Id.*

Kimco now argues that there is evidence of the fair market value of the leased equipment at the time the purchase option is exercised. Specifically, Kimco explains that the purchase option price is equal to ten percent (10%) of the price paid by Kimco to purchase the equipment. Kimco further explains that the purchase option is exercised at the *beginning* of the lease and that the fair market value of the equipment at the beginning of the lease is the price paid by Kimco to purchase it. Accordingly, Kimco concludes that the purchase option price is nominal in relation to the fair market value of the equipment at the time the option is exercised.

■ The court first notes that Kimco's argument that the purchase option is exercised at the *beginning* of the lease is not new. Kimco made this argument to the court in *Kimco I. Transcript of August 12, 1992 Trial* at 50; *Transcript of January 21, 1993 Oral Argument* at 11. The court was not persuaded by the argument in *Kimco I*

**9.** While I.C. 26–1–1–201(37) defines the term "security interest" for purposes of the Uniform Commercial Code (U.C.C.), it was (and is) appropriate for this court to look to I.C. 26–1–1–201(37) for guidance in interpreting I.C. 6–1.1–1–9(e). Indeed, "[i]n construing the meaning of certain words contained in a statute, the legislative definition of the same words in another act (although not conclusive) is entitled to consideration in construing the same words when used in another statute upon the same, or related, subject." *Adkins v. Ind. Employment Sec. Div.* (1946), 117 Ind.App. 132, 137, 70 N.E.2d 31, 33; *see also Board of Equalization v. First Security Leasing Co.* (1994), Utah, 881 P.2d 877 (holding that tax commission acted properly when it used the U.C.C. definition of "security interest" in determining whether taxpayer's leases were true leases or security interests).

**10.** Courts differ on whether the amended version of U.C.C. § 1–201(37) is to be applied retroactively or prospectively. *Compare General Electric Capital Corp. Danneman Assoc.* (1995), De.Super.Ct., 1995 WL 163561, *3–5; *In re Thompson* (1989), Bankr.N.D.Okla., 101 B.R. 658, *rev'd* (1990), N.D.Okla., 114 B.R. 278, *with In re Bumgardner* (1995), Bankr.N.D.Idaho, 183 B.R. 224; *Carlson v. Giacchetti* (1993), 35 Mass.App.Ct. 57, 616 N.E.2d 810; *In re Cole* (1990), N.D.Okla., 114 B.R. 278.

and it is not persuaded by the argument now. Kimco's leases state: "At the *completion* of this Lease the Equipment may be purchased for _____ (purchase option)." *Equipment Agreement* (attached to complaints in *Kimco I* and *Kimco II*); *Equipment Lease Agreement* (attached to complaint in *Kimco III*) (emphasis added). The word "completion" is defined as the "act of becoming complete" and the word "complete" is defined as "to *end* after satisfying all demands or requirements." *Webster's Third New International Dictionary* 465 (1981) (emphasis added). Thus, the plain meaning of the words used in Kimco's leases indicates that the purchase option arises at the end, not the beginning, of the lease term.

▪ Although the court does not accept Kimco's argument that the purchase option arises at the beginning of the lease, it could still hold in Kimco's favor if there was evidence that the purchase option price was nominal in relation to the fair market value of the leased equipment at the *end* of the lease. There is, however, no evidence regarding the fair market value of the equipment at the end of the lease. Kimco insists that it is unreasonable for the court to require such evidence because the purchase option price is established at the beginning of the lease and, at the beginning of the lease, it is impossible to know what effect appreciation, depreciation, inflation, and/or advancements in technology may have upon the fair market value of the leased equipment at the end of the lease term. *See Transcript of March 30, 1995, Oral Argument* at 14. The court, however, does not require Kimco to show the actual fair market value of the equipment at the end of the lease term. "[I]n determining whether option price is nominal, the proper figure to compare it with is not the actual fair market value of the leased goods at the time the option arises, but their fair market value at that time as anticipated by the parties when the lease is signed." *Marhoefer*, 674 F.2d at 1144–45; *see also In re Hispanic American Television Co.* (1990), Bankr.N.D.Ill., 113 B.R. 453, 459. Indeed, it is at the beginning of a lease that either a true lease or a security interest is created and the effects of appreciation, depreciation, inflation, and/or advancements in

technology cannot change what was initially created as a true lease into a security interest, or vice versa. *See Marhoefer*, 674 F.2d at 1145.

▪ The evidence shows that when Kimco enters into a lease agreement, it anticipates that at the end of the lease term, the leased equipment will have virtually no value to Kimco but will have some value to the lessee. *See Transcript of August 12, 1992 Trial* at 58. This is the same evidence that was before the court in *Kimco I*, and, as in *Kimco I*, the court finds the evidence is insufficient to satisfy the "nominal consideration test." Indeed, without some concrete information regarding the anticipated fair market value of the leased equipment at the time the purchase option is to be exercised, it is impossible to compare the purchase option price to the anticipated fair market value of the leased equipment at the time the purchase option is to be exercised. Consequently, Kimco does not satisfy the "nominal consideration" test.

▪ Under the "economic realities" test, courts consider the relationship of the purchase option price to the original purchase or list price. *Kimco I*, 622 N.E.2d at 593–94. A purchase option price less than twenty-five percent (25%) of the original purchase or list price constitutes evidence of a security interest. *Id.* In *Kimco I*, the court found that Kimco's leases did not state the original purchase or list price. *Id.* at 594. Consequently, the court could not determine whether Kimco's leases were true leases or security interests under the "economic realities" test. *Id.*

Kimco now argues that although the original purchase or list price of the leased equipment is not stated on the face of its leases, the original purchase or list price is easily ascertained. Specifically, Kimco explains that at the beginning of its leases, each lessee is required to pay a security deposit in an amount equal to ten percent (10%) of the original purchase or list price. Kimco further explains that the dollar amount of the security deposit is stated on the face of each lease and that the security deposit "converts" into the purchase option price at the end of the lease.[11] Kimco asserts that anyone who

11. Indeed, each of Kimco's leases contains a purchase option whereby the lessee may become

reads the lease knows that the security deposit is equal to ten percent (10%) of the original purchase or list price because there is a box underneath the line on which the dollar amount of the security deposit is written which states "10% Net Cost (Security Deposit)." Accordingly, Kimco concludes that all one needs to do to ascertain the original purchase or list price of the leased equipment is to multiply the security deposit by ten (10).

The court first notes that Kimco's leases state either:

1) Check For This Amount Must Accompany The Lease Application.

$ _____

1st ☐ Monthly Payment

Last _____ Monthly Payment(s)

☐ 10% Net Cost,

*Equipment Lease* (attached to *Kimco II* complaint as Exhibit A), or

2) Check For This Amount Must Accompany The ·Lease Application.

$_____

1st ☐ Monthly Payment

Last _____ Monthly Payment(s)

☐ 10% Net Cost (Security Deposit),[12]

*Equipment Lease Agreement* (attached to *Kimco III* complaint as Exhibit A).

The sample lease attached to the *Kimco II* complaint states that lease application must be accompanied by a check in the amount of $289.24. *Equipment Lease* (attached to *Kimco II* complaint as Exhibit A). As evidenced by the box marked with an "x" below that dollar figure, the $289.24 represents the lessee's first monthly payment. *Equipment Lease* (attached to *Kimco II* complaint as Exhibit A). No other boxes are marked with an "x." *Equipment Lease* (attached to *Kimco II* complaint as Exhibit A). The sample lease also states that "[a]t the end of this lease the equipment may be purchased for $190.29," which is the purchase option price. *Equipment Lease* (attached to *Kimco II* complaint as Exhibit A). From these figures, the court gleans absolutely nothing about the original purchase or list price of the leased equipment. Moreover, the lease is inconsistent with Kimco's argument that the original purchase or list price may be easily ascertained by looking to the amount of the security deposit stated on the lease, for no security deposit is stated on the face of the lease.

The sample lease attached to the *Kimco III* complaint states that a check in the amount of $615.82 must accompany the lease application. *Equipment Lease Agreement* (attached to *Kimco III* complaint as Exhibit A). As evidenced by the boxes marked with an "x," the $615.82 includes the first monthly payment *and* "10% Net Cost (Security Deposit)." *Equipment Lease Agreement* (attached to *Kimco III* complaint as Exhibit A). Consequently, the dollar figure stated on the face of the lease agreement is not equal to 10% of the original purchase or list price, as Kimco contends.[13] As a result, Kimco does not satisfy the "economic realities" test.

the owner of the leased equipment by allowing Kimco to retain the security deposit at the end of the lease term.

12. Kimco changed the language of its leases at some point to add the words "security deposit."

13. The sample lease attached to the *Kimco III* complaint further states:

LEASE PAYMENT AMOUNT
36 Monthly Payments of $166.32 Plus Sales Tax.

While Kimco did not argue that the amount of the security deposit could be determined by subtracting $166.32 from $615.82, it appears to the court that this argument could be made. The court is not convinced, however, that it would necessarily arrive at the amount of the security deposit by performing this mathematical calculation and then multiplying the resulting number by ten (10), for it is not evident from the face of the lease that the first monthly payment is necessarily equal to remaining monthly payments. It could be the case that there are 37 payments under the lease, the first of which is for an amount greater than the remaining 36. Because the court can only speculate as to the number of payments under the lease and the dollar amount of the first monthly payment, and because, at best, the original purchase or list price can only be determined after performing a number of mathematical calculations, the court is not persuaded that the original purchase or list price is "easily ascertained" from the face of the leases. In any event, the fact remains that Kimco's leases do not state the original purchase or list price of leased equipment.

**B. Leases Written After July 1, 1991**

The leases written by Kimco after July 1, 1991, are governed by the amended version of I.C. 26–1–1–201(37), which states:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. . . .

Whether a transaction creates a lease or security interest is determined by the facts of each case. However, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee and:

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods;

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or

(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

A transaction does not create a security interest merely because it provides that:

(a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into;

(b) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods;

(c) the lessee has an option to renew the lease or to become the owner of the goods;

(d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market value rent for the use of the goods for the term of the renewal at the time the option is to be performed; or

(e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

Based on this language, the court finds that I.C. 26–1–1–201(37) sets forth two different tests for determining whether a lease is a true lease or a disguised security interest. *See also In re Lerch* (1992), Bankr.C.D.Ill., 147 B.R. 455; *In re Zaleha* (1993), Bankr.D.Idaho, 159 B.R. 581, 583–84.

Under the first test, which may be characterized as a "bright line" test, a lease creates a security interest as a matter of law if: 1) the lessee is obligated to perform for the full length of the lease without being able to voluntarily terminate it, and 2) one of four enumerated terms are present. I.C. 26–1–1–201(37); *see also Lerch,* 147 B.R. at 460; *Zaleha,* 159 B.R. at 584. Kimco's lessees have no right to voluntarily terminate their leases before the end of the lease term. *Kimco I,* 622 N.E.2d at 592. Accordingly, Kimco's leases satisfy the first part of the "bright line" test. Under the second part of the "bright line" test, the court must consider whether Kimco's leases satisfy one of the four enumerated terms:

(1) the original term of the lease must be equal to or greater than the remaining life of the goods;

(2) the lessee must be bound to renew the lease for the remaining economic life of the goods or must be bound to become the owner of the goods;

(3) the lessee must have an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or

(4) the lessee must have the option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

I.C. 26–1–1–201(37); *see also Lerch,* 147 B.R. at 460; *Zaleha,* 159 B.R. at 584. The original term of a typical Kimco lease is *shorter* than the remaining economic life of the leased equipment. *Transcript of August 12, 1992 Trial* at 63. Consequently, Kimco's leases do not satisfy the first term. Kimco's leases make no mention of any obligation or option to renew the lease or to become the owner of the leased equipment. Consequently, Kimco's leases do not satisfy the second and third terms. The only term that Kimco's leases might possibly satisfy is the fourth, for they contain purchase options whereby the lessee may become the owner of the leased equipment upon compliance with the lease agreement for additional consideration. Kimco's leases, however, create security interests only if that additional consideration is *nominal.*

The amended version of I.C. 26–1–1–201(37) instructs that "[a]dditional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised." In determining whether additional consideration is nominal, courts have continued to utilize the "nominal consideration" test described above. *See Zaleha,* 159 B.R. at 586. As already explained, however, Kimco does not satisfy the "nominal consideration" test. Consequently, Kimco's leases are not security interests under the "bright line" test.

■■■■ Under the second test, which may be characterized as the "meaningful residual interest" test, the court must deter-

mine "whether the lessor retains a meaningful residual interest" in the leased property at the end of the lease term. *Zaleha,* 159 B.R. at 585.[14] If the lessor retains a meaningful residual interest in the leased property at the end of the lease term, the lease is a true lease. If, however, the lessor cannot reasonably expect to receive back anything of value at the end of the lease, then the lease creates a security interest. *Id.* at 584. In order to determine whether the lessor retains a meaningful residual interest, the court must consider: 1) whether the lease contains an option to purchase for no or nominal consideration, and 2) whether the lessee develops equity in the leased property such that the only sensible decision economically for the lessee is to exercise the purchase option.[15] *Id.*

Without information regarding the fair market value of the leased equipment at the time the purchase option is to be exercised (as anticipated by the parties when the lease was signed), it is impossible to determine: 1) whether Kimco's leases contain an option to purchase for nominal consideration, or 2) whether the only sensible decision economically for Kimco's lessees is to exercise their purchase options. Consequently, the court cannot hold that Kimco's leases are security interests under the "meaningful residual interest" test.

## II

With regard to the March 1, 1991, assessment, the State Board found that Kimco did not file business personal property tax returns in certain counties.[16] Kimco now ar-

---

**14.** The court is persuaded by reasoning of the *Zaleha* decision. *Id.* In that case, the U.S. Bankruptcy Court for the District of Idaho abandoned many of the factors it previously considered in determining whether a lease created a true lease or a security interest and instead focused on "whether the lessor retains a meaningful residual interest at the end of the lease term." *Id.*

**15.** The court follows the *Zaleha* decision and abandons consideration of such factors as: 1) whether the lessee bears the risk of loss, 2) whether the lessee is responsible for payment of insurance and taxes, 3) whether the lessor may accelerate payment, 4) whether the property is purchased specifically for lease to the lessee, and 5) whether the lease contains a disclaimer of warranties. *Zaleha,* 159 B.R. at 585. In addi-

tion, the court will no longer consider such factors as a lessor's lack of storage facilities, and a lessor's character as a financing party rather than a dealer in goods. *See* Uniform Commercial Code Official Commentary at n. 37 (following I.C. 26–1–1–201(37)). All of the above factors are just as applicable to true leases as they are to security interests and provide no real guidance in distinguishing the two. *See id.*

**16.** The counties include, Allen, Bartholomew, Brown, Clark, Daviess, Decatur, DeKalb, Delaware, Dubois, Elkhart, Floyd, Grant, Hancock, Hendricks, Henry, Howard, Huntington, Jay, Jefferson, Jennings, Knox, Lake LaPorte, Madison, Marshall, Monroe, Morgan, Noble, Porter, Pulaski, Randolph, Ripley, Rush, Scott, Shelby, Union, Wabash, and Wells counties.

gues that the State Board's final determination must be reversed because it unsupported by substantial evidence. *See Brief in Support of Taxpayer's Proposed Findings of Fact and Conclusions of Law* (filed October 28, 1994) at 5.

■ In order to prove that it had filed the returns in question, Kimco presented the testimony of John A. Hoffman, the son of Kimco's president, and Richard J. Hoffman, Kimco's president. John Hoffman testified that he helped prepare Kimco's returns for the March 1, 1991, assessment. He also testified that he personally: 1) addressed each of the envelopes in which Kimco's returns were mailed; 2) made sure that each envelope reflected Kimco's return address; 3) affixed the required first class postage to each envelope; 4) took all of the envelopes (except those for Allen County) to the Hazelwood Post Office in Fort Wayne; 5) handed the envelopes to a postal worker there; and 6) hand delivered the envelopes for Allen County to each township assessor in that county. *Transcript of July 18, 1994 Trial* at 43–44. Richard Hoffman testified that none of the envelopes were returned to Kimco as undeliverable. *Transcript of July 18, 1994 Trial* at 34–38. Kimco argues that this testimonial evidence of mailing is so strong that it conclusively establishes that the returns in question were filed. *See Brief in Support of Taxpayer's Proposed Findings of Fact and Conclusions of Law* (filed October 28, 1994) at 3–5.

While the State Board had no obligation to prove that Kimco did not file the returns in question, the State Board presented evidence that neither its records nor the county assessors' records reflected that Kimco had filed the returns in question. *Respondent's Exhibits C and E* (filed in *Kimco II* case); *see also Transcript of July 18, 1994 Trial* at 49–53. The State Board also presented the testimony of Jeffrey L. Kelsey, Assistant Director of the State Board's Business Personal Property Tax Division, who explained that Kimco was unable to provide tangible proof that it had filed the returns in question, such as certified mail receipts or file stamped copies of the returns. *Transcript of July 18, 1994 Trial* at 48–54.

■ Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *South Shore Marina, Inc. v. State Board of Tax Commissioners* (1988), Ind. Tax, 527 N.E.2d 738, 742, *aff'd* (1989), Ind., 543 N.E.2d 644. From the evidence presented, the court concludes that a reasonable mind could conclude that Kimco failed to file the returns in question. Indeed, Kimco's testimonial evidence was contradicted not only by the State Board's records, but also by Kimco's inability to produce tangible proof that it had filed the returns in question.

### III

For the March 1, 1992, assessment, Kimco filed Confidential Business Tangible Personal Property Consolidated Returns (Forms 103–C) in various Indiana counties, including Delaware, Fayette, Floyd, Fulton, Kosciusko, Lake, Madison, Marion, Randolph, and Wells counties. On its Forms 103–C, Kimco: 1) stated that it was the owner, but not the taxpayer; 2) left blank the summary section used to declare the assessed value of the personal property; and 3) did not fill out any of the accompanying schedules. Kimco did, however, attach to its Forms 103–C computer print-outs containing information about the leased equipment located in each county.

Also for the March 1, 1992, assessment date, Kimco filed Returns of Not Owned Property (Forms 103–O) in various Indiana counties, including Fulton, Marion, and Wells counties. Kimco did not, however, file a Form 103–O in Delaware, Fayette, Floyd, Kosciusko, Lake, Madison, and Randolph counties. In preparing its Forms 103–O, Kimco completed Schedule I and reported that its leased equipment was subject to "operating leases." Kimco did not complete Schedule II, which is used to report property subject to "capital leases."

Some of the counties in which Kimco filed its Forms 103–C and Forms 103–O accepted Kimco's returns together with the computer print-outs. Those counties did not assess Kimco personal property taxes on leased equipment located within their jurisdictions. Delaware, Fayette, Floyd, Fulton, Kosciusko, Lake, Madison, Randolph, and Wells, coun-

ties, and Decatur and Washington Townships in Marion county, however, found that Kimco's returns were incomplete and/or ambiguous or confusing and assessed Kimco personal property taxes on leased equipment located within their jurisdictions.

Kimco argued in its appeal to the State Board that the taxes imposed by the counties were illegal as a matter of law because Kimco was not the "owner" of the leased equipment, and its leases were "capital leases," not "operating leases." The State Board disagreed. It observed that Kimco's statement on its Forms 103–C that it was the "owner" of the property and Kimco's declaration via Schedule I of the Form 103–O that its leases were "operating leases" contradicted the claims raised in its appeal. The State Board then determined that "[t]he taxes imposed by the Counties [were] not illegal, rather they [were] the natural and proper result of the returns filed by Kimco." *State Board's 1992 Final Order* ¶ 16 at 8.

Kimco now argues that the State Board's final determination must be reversed. Apparently, it is Kimco's position that even if it is the "owner" of the leased equipment for purposes of taxation, and even if its leases are "operating leases" and not "capital leases," the taxes imposed by the counties were still illegal because the State Board assured it that if it complied with the requirements for filing a consolidated property tax return as set forth in I.C. 6–1.1–3–7, all taxes would be assessed to its lessees. *See Transcript of November 21, 1994 Trial* at 23; *see also Respondent's Exhibit D* (March 3, 1992, letter to Kimco from State Board's Personal Property Tax Division); *Transcript of March 30, 1995, Oral Argument* at 19–21. Kimco insists that it complied with I.C. 6–1.1–3–7 and yet the State Board still assessed it.

 I.C. 6–1.1–3–7(d) provides, in part, that "[a] taxpayer filing a consolidated return shall attach a schedule listing, by township,

all the taxpayer's personal property and the property's assessed value." An examination of Kimco's returns reveals that Kimco did not comply with the filing requirements of I.C. 6–1.1–3–7(d). While Kimco's computer print-outs provided the addresses of Kimco's lessees, the addresses were not listed *by township*.[17] Further, while Kimco's computer print-outs included information including the "lease cost," "lease date," and "last payment date," they did not list the *assessed value* of Kimco's leased equipment.

 Kimco argues that from the information supplied on its computer print-outs, assessing officials could easily discern where the leased equipment was located and its assessed value. *See Taxpayer's Proposed Findings of Fact and Conclusions of Law* (filed January 13, 1995) ¶ 12 at 4. It is not the responsibility of assessing officials, however, to interpret Kimco's data and calculate the assessed value of Kimco's leased equipment. It is Kimco's responsibility to interpret its data and calculate and report the assessed value of its leased equipment—even if Kimco believes that its lessees are liable for taxes on the leased equipment. Indeed, the Indiana personal property tax system is a *self* assessment system. *Paul Heuring Motors v. State Bd. of Tax Comm'rs,* (1993), Ind.Tax, 620 N.E.2d 39, 41.

 Kimco further notes that some counties found its Forms 103–C and computer print-outs acceptable. It then argues that if its returns satisfied the filing requirements of I.C. 6–1.1–3–7(d) in some counties, they should have satisfied the filing requirements of I.C. 6–1.1–3–7(d) in all counties. The fact that some county assessors accepted Kimco's incomplete returns does not mean, however, that all county assessors were required to accept Kimco's incomplete returns.[18]

Even if Kimco's computer print-outs had contained all of the information required by

---

17. Many of Kimco's computer print-outs supplied the addresses of lessees located in counties other than the one in which the return was filed. Consequently, some county assessors were required to sort through the addresses on the computer print-outs not only to ascertain which lessees were located in which townships, but also to ascertain which leases were even located in their counties.

18. The law now specifically provides that county assessors "may refuse to accept a consolidated personal property tax return that does not have attached to it a schedule listing, *by township,* all the personal property of the taxpayer and the *assessed value* of the property as required under [I.C. 6–1.1–3–7(d)]." I.C. 6–1.1–3–7(g) (added by P.L.41–1993, Sec. 4) (emphasis added).

I.C. 6–1.1–3–7(d), the court would still uphold the assessment against Kimco, for Kimco failed to comply with other requirements. The State Board is required to "prescribe the property tax forms and returns which taxpayers are to complete and on which the taxpayers' assessments will be based." IND. CODE 6–1.1–31–1. Accordingly, the State Board prescribed the Form 103–C for use by taxpayers who are eligible to file a consolidated business personal property tax return under I.C. 6–1.1–3–7(d). All taxpayers who wish to file a consolidated business personal property tax return under I.C. 6–1.1–3–7(d) are required to use the Form 103–C and its accompanying schedules, unless they receive *prior approval* from the State Board to use a computer or machine prepared substitute tax return form or schedule pursuant to 50 I.A.C. 4.2–1–6.[19] 50 I.A.C. 4.2–2–9(c). While Kimco submitted the Forms 103–C, it did not complete the forms by entering the required information on the appropriate lines, nor did it receive prior approval from the State Board to use computer print-outs in lieu of a *complete* Form 103–C, including schedules.

Moreover, Kimco did not comply with the filing requirements prescribed in 50 I.A.C. 4.2–2–5 and 50 I.A.C. 4.2–8–3. Those regulations require that any person who owns property that is held, possessed, or controlled by another must file a Form 103–O. Kimco, however, did not file a Form 103–O in Delaware, Fayette, Floyd, Kosciusko, Lake, Madison, and Randolph counties. The failure to file required personal property tax returns permits assessing officials to assess personal property tax against the person owning, holding, possessing, or controlling the property. *See Kimco I,* 622 N.E.2d at 595; I.C. 6–1.1–3–15; I.C. 6–1.1–2–4.

The State Board did not err when it determined that the taxes imposed by Delaware, Fayette, Floyd, Fulton, Kosciusko, Lake, Madison, Randolph, and Wells counties and Decatur and Washington Townships in Marion county were legal.

**IV**

Finally, Kimco argues that the State Board erred when it determined that Kimco's leases were "operating leases" and not "capital leases" under 50 I.A.C. 4.2–8. Regardless of whether a lease is an "operating lease" or a "capital lease," the owner of property subject to a lease must file a Return of Owned Personal Property Not in Possession of Owner (Form 103–O). *Kimco I,* 622 N.E.2d at 595; 50 I.A.C. 4.2–8–3; 50 I.A.C. 4.2–8–4. As noted above, the failure to file a required Form 103–O permits assessing officials to assess personal property taxes against the person owning, holding, possessing, or controlling the property. *See Kimco I,* 622 N.E.2d at 595; I.C. 6–1.1–3–15; I.C. 6–1.1–2–4.

**A. The March 1, 1991, Assessment**

As explained above, Kimco failed to file Forms 103–O in certain counties for the March 1, 1991, assessment. Indeed, Kimco failed to file *any* personal property tax return forms in certain counties for the March 1, 1991, assessment. Consequently, the State Board did not err in assessing Kimco for the unreported leased equipment.

**B. The March 1, 1992 Assessment**

Also as explained above, Kimco failed to file Forms 103–O in Delaware, Fayette, Floyd, Kosciusko, Lake, Madison, and Randolph counties for the March 1, 1992, assessment. Because Kimco did not file Forms 103–O in those counties, as required by law, the assessments levied against Kimco by those counties were proper.

For the March 1, 1992 assessment, Kimco filed Forms 103–O in Fulton, Marion, and Wells counties. On those forms, however, Kimco reported that its leased equipment was property subject to "operating leases." Because Kimco reported its property as subject to "operating leases," this court cannot say that Fulton and Wells counties and Decatur and Washington Townships in Marion County erred in assessing its property as property subject to "operating leases." The

19. 50 I.A.C. 4.2–2–9(e) provides that "[e]very person required to file a personal property tax return ... must report all personal property ... *on* the form currently authorized as provided herein." (Emphasis added). While the Form

103–C is not specifically listed under 50 I.A.C. 4.2–2–9(b), the court holds that the law should be applied to the Form 103–C in the same way that it is applied to the forms contained within that list:

court agrees with the State Board that the taxes imposed were the "natural and proper result" of the returns filed by Kimco.

## CONCLUSION

For the foregoing reasons, the court hereby AFFIRMS the State Board's final determinations regarding Kimco's March 1, 1991, and March 1, 1992, business personal property tax assessment.