**In re Freddie J. WAKEFIELD, Jr.,
SSN: 255–35–4135, Debtor.**

**HPSC, INC., Movant,**

**v.**

**Freddie J. WAKEFIELD, Jr., Respondent.**

**Bankruptcy No. 97–70641–JTL.**

United States Bankruptcy Court,
M.D. Georgia,
Valdosta Division.

Jan. 21, 1998.

W. Orson Woodall, Valdosta, GA, for Movant.

David M. Wolfson, Valdosta, GA, for Respondent.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On December 10, 1997, the court held a hearing on the motion of HPSC, INC. ("HPSC") for relief from stay. At the hearing, the parties requested that the court determine what effect the confirmation of Debtor's Chapter 13 plan had on two agreements entered into by HPSC and Debtor. The agreements are purported to be leases.

At the conclusion of the hearing the court took the matter under advisement. After consideration of the applicable statutory law and case law, the court, for reasons indicated below, finds first that the agreements in question are disguised security agreements not true leases. Secondly, the court finds that even if the agreements were true leases, HPSC is bound by Debtor's confirmed Chapter 13 plan. As a result, the court will deny HPSC's motion for relief from the automatic stay.

### Facts

Sometime in the fall of 1993 and early 1994, Debtor entered into two agreements with HPSC that purported to be leases.[1] Under the first agreement ("Agreement 1"), Debtor received equipment with a total cost of $48,682.90.[2] Debtor was required to make seventy-two (72) monthly payments on the equipment. In months one (1) through six (6), Debtor was to make payments of $590.52, of which $511.17 was designated as equipment rent.[3] In months seven (7) through twelve (12), Debtor was to make payments of $848.53, of which $754.58 was designated as equipment rent. In months thirteen (13) through thirty-six (36), Debtor was to make payments of $1,080.76, of which $973.66 was designated as equipment rent. Finally, in months thirty-seven (37) through seventy-two (72), Debtor was to make payments of $1,287.69, of which $1,168.88 was designated as equipment rent. In total, Debtor was to pay $80,929.38, of which $73,042.02 was designated as equipment rent.[4] Also, Debtor's wife, Alesia Wakefield, signed a guaranty for Agreement 1.

Apparently, Debtor had defaulted under the terms of Agreement 1 within a year. On October 3, 1994, HPSC sent a letter to Debtor setting forth a proposal to cure the delinquency. The letter set forth a revised payment schedule and requested that Debtor sign a security agreement. Debtor signed the security agreement, which granted HPSC a security interest in:

all of Debtor's personal property and fixtures of every type and nature whatsoever, whether presently held or owned or acquired at any time in the future, including, without any limitation, all goods, equipment, machinery, furnishings, furniture, vehicles, inventory, work in process, raw materials, finished goods, accounts, accounts receivable, debts, leases, contract rights, instruments, documents, deposit accounts, chattel paper, securities, policies of insurance, general intangibles, intellectual property, patents, trademarks, goodwill,

---

1. Neither agreement is dated. However, the financing statements that HPSC filed with regard to these leases identify the first lease as having a date of October 14, 1993, and the second lease as having a date of January 28, 1994.

2. The equipment did not come directly from HPSC. HPSC obtained the equipment from a third party supplier for this transaction.

3. The additional amounts in the payments were for sales tax and insurance.

4. The $73,042.02 amount designated as equipment rent is approximately 50% more than the equipment cost of $48,682.90.

business records, patient records, permits, licenses, tax refunds, customer lists, leasehold interests and cash and all accessions and additions thereto and substitutions therefor, and all proceeds, rents, profits and products of all of the foregoing, including insurance proceeds.[5]

¶ *1 of Security Agreement attached as Exhibit to Motion.* Debtor signed the letter in acknowledgment of the amendment on October 27, 1994, the same day he signed the security agreement.

The second agreement between Debtor and HPSC ("Agreement 2") resulted in Debtor receiving equipment with a total cost of $3,950.00.[6] Under Agreement 2, Debtor was to make sixty (60) monthly payments. Each payment was to be for $93.98, of which $84.93 was designated as equipment rent.[7] In total, Debtor was to pay $5,638.80, of which $5,095.80 was designated as equipment rent.[8] On February 8, 1994, HPSC filed a financing statement giving notice of the equipment lease. As with Agreement 1, Debtor's wife signed a guaranty with respect to Agreement 2.

Both agreements cannot be canceled by Debtor. Moreover, the agreements obligate Debtor to pay insurance and taxes. Both agreements put the burden of repair and loss and damage on Debtor. Furthermore, in both agreements, paragraph 18 provides that at the expiration of the lease the equipment shall be returned to HPSC unless otherwise agreed by the parties. Shortly after the parties entered into the agreements, HPSC sent two letters to Debtor.[9] Debtor signed both letters in acknowledgment. Each letter provided that in addition to returning the

equipment Debtor would have the option to purchase the equipment for 10% of the equipment's original value. As a result, with respect to the equipment in Agreement 1, Debtor could pay an additional consideration of $4,868.29 to keep the equipment. With respect to Agreement 2, Debtor could pay an additional consideration of $395.00 to keep the equipment.

In Debtor's Chapter 13 plan, which was served upon HPSC, Debtor effectively proposed to treat the agreements with HPSC as disguised security agreements. Specifically, Debtor's proposed in his plan to pay HPSC $20,000 with 9% interest.[10] Debtor listed HPSC's collateral as "Dental Equipment." HPSC did not object to confirmation and the court confirmed Debtor's plan on September 19, 1997.[11]

Subsequently, on October 20, 1997, HPSC filed this motion for relief from stay contending that Debtor failed to assume or reject the leases and failed to make payments in accordance with the agreements with HPSC. Debtor contends that he proposed to treat the agreements as disguised security agreements and to pay HPSC accordingly. Debtor further contends that HPSC did not object to confirmation and is bound by the confirmed plan. HPSC asserts that Debtor's plan did not provide for the lease agreements. HPSC contends that it did not have notice that Debtor intended to treat the agreements as disguised security agreements. Therefore, HPSC argues that it should not be bound by Debtor's plan. Additionally, HPSC questions whether Debtor has properly proposed to pay its claim without having assumed or rejected the leases.

---

5. HPSC filed a financing statement covering this collateral on October 25, 1993. At the same time HPSC had filed a financing statement giving notice of the equipment lease.

6. As with Agreement 1, the equipment did not come directly from HPSC. HPSC obtained the equipment from a third party supplier for this transaction.

7. As with Agreement 1, the additional amounts were for sales tax and insurance.

8. The $5,095.80 amount designated for equipment rent is approximately 29% more than the equipment cost of $3,950.00.

9. HPSC sent one letter for each agreement, for a total two letters.

10. Debtor's plan stated that Debtor owed HPSC $41,628.34. However, Debtor proposed to cramdown HPSC's claim to the value of the collateral, which Debtor stated was only $20,000. Debtor did not list any additional collateral for HPSC in his schedules, nor did Debtor propose a treatment for HPSC's additional collateral granted in the security agreement of October 27, 1994.

11. The court notes that HPSC filed a proof of claim on October 14, 1997, after confirmation.

*Discussion*

The court believes that as a threshold matter, it is helpful to know whether the agreements in question are actually leases or disguised security agreements.[12] As a result, the court will first consider whether the agreements in question are actually leases or disguised security agreements. The court will then determine how confirmation of Debtor's plan has affected the agreements in question.

 Whether an agreement is a true lease or a disguised security agreement, for purposes of Bankruptcy Code, is determined by state law. *Mr. C's Rent to Own v. Jarrells (In Matter of Jarrells)*, 205 B.R. 994, 996 (Bankr.M.D.Ga.1997); *Central Rents, Inc. v. Johnson (In re Johnson)*, 203 B.R. 498, 500 (Bankr.S.D.Ga.1996). The agreements in question before the court contain a choice of law provision that provides that the law of Massachusetts governs. Accordingly, the court will apply the law of Massachusetts to determine the true nature of the agreements.

Section 1–201(37) of Massachusetts' version of the Uniform Commercial Code ("UCC") sets forth the rules for determining whether a transaction creates a lease or security interest. Specifically, this section provides in relevant part:

> Whether a transaction creates a lease or "security interest" is determined by the facts of each case; however, a transaction creates a "security interest" if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and:
>
> > (a) the original term of the lease is equal to or greater than the remaining economic life of the goods,
>
> > (b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,
>
> > (c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal consideration upon compliance with the lease agreement, or
>
> > (d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

MASS.GEN.LAWS. ch 106, § 1–201 (1997).[13] As a result, if the lessee is bound for the entire term of the agreement and if any one of the requirements of subparagraphs (a), (b), (c), or (d) are met, then the court's inquiry ends and the transaction is deemed to have created a security interest. *See In re Johnson*, 203 B.R. at 501; *see also*, White & Summers, *Uniform Commercial Code* § 30–3(e) (4th ed.1995).

The agreements that are in question before the court both contain provisions that prevent the lessee, that is Debtor, from canceling the agreements. Therefore, Debtor was obligated for the entire term of the agreement. As a result, the first element of the § 1–201(37) test is met.

Next, the court must determine if the transactions fall within subparagraphs (a), (b), (c), or (d). The court has no evidence before it concerning the economic life of the equipment in question. Accordingly, the court cannot find that the requirements have been met for subparagraphs (a), (b), or (c). Thus, the court will restrict its analysis to subparagraph (d) and will consider whether the consideration that Debtor could pay at the end of the lease to become owner of the equipment is nominal. "If the option price is for a nominal price it will be a clear index of an intention to transfer ownership by virtue

---

12. In its brief, HPSC contends that this issue is not before the court. However, the court believes that the determination of whether the agreements in question are true leases is integral to determining the sufficiency of Debtor's treatment of the debt to HPSC. Moreover, the court specifically raised the issue at the December 10, 1997 hearing.

13. The court points out that Massachusetts version of the UCC is similar if not the same as most other jurisdictions. Accordingly, decisions from other jurisdictions can be instructive.

of the lease agreement." *In the Matter of Berge,* 32 B.R. 370, 372 (Bankr.W.D.Wis. 1983).

The court finds the decision of *Orix Credit Alliance, Inc. v. Pappas,* 946 F.2d 1258 (7th Cir.1991), to be instructive. In *Orix,* Orix Credit Alliance, Inc. ("Orix") leased six trailers to the debtor. Orix purchased the trailers from a third party supplier as a condition of the agreement. Debtor had defaulted on payments and subsequently filed bankruptcy. Orix sued the two guarantors of the agreement with the debtor. The guarantors argued that the agreement was a disguised security agreement and not a lease as contended by Orix. The court, therefore, had to decide whether the agreement in question was a disguised security agreement or a true lease.

The court found that the agreement was in fact a security agreement. *Id.* at 1261–63. The court initially looked at whether the option price to purchase the equipment at the end of the agreement was nominal. The court stated, "[t]o determine whether an option price represents nominal consideration, it can be compared to the total rental price of the equipment." *Id.* at 1261 citing *Matthews v. CTI Container,* 871 F.2d 270, 275 (2d Cir.1989). The option price was 12% of the total rental payments. The court considered this a significant factor in determining whether the agreement was a sale instead of a lease. *Id.* Next, the court compared the initial cost of the trailers with the total of the payments and found that the payments exceeded the purchase price by 20%. *Id.* at 1262. The court concluded that given the total rental payments exceeded the initial purchase price by 20%, the agreement could be considered a conditional sale on the theory "that the total rental payments may represent the fair market value of the trailers plus a financing charge." *Id.; see also, Citi–Lease Company v. Entertainment Family Style, Inc.,* 825 F.2d 1497, 1499–1500 (11th Cir.1987); and *Tri Leasing Corporation v. Fulton Textiles, Inc. (In Matter of Fulton Textiles, Inc.),* 116 B.R. 302, 304 (Bankr. N.D.Ga.1990) (Fact that total of rental payments exceeded cost of collateral by 15%

indicated that agreement was security agreement not a lease).

Moreover, the court found other factors that indicated the agreement was not a true lease. For example, the debtor bore the risk of loss or damage. The debtor was obligated to repair the collateral at its own expense, to maintain insurance, and to pay all taxes during the term of the agreement. The court found significant Orix's requirement of a guaranty executed by a third party. Finally, the court deemed it significant that Orix entered the transaction without any property to lease. *Id.* at 1262–63; *see also, Citi–Lease Company,* 825 F.2d at 1500.

The court finds that the factors that led the court in *Orix* to conclude that the agreement was a security agreement and not a lease are also present in the agreements before this court. First of all, the option price at the end of the agreement term is 10%. This is less than the 12% in *Orix,* which the court considered significant. Furthermore, the total payments under Agreement 1 exceed the initial cost of the equipment by approximately 50%. *See* note 4, *supra.* Moreover, the total payments under Agreement 2 exceed the initial cost of the equipment by approximately 29%. *See* note 8, *supra.* Both agreements far exceed the 20% level the court found significant in *Orix.* This court likewise finds these factors to be significant in concluding that the option price is nominal.

Furthermore, in the agreements before the court Debtor bears the risk of loss or damage. The agreements obligate Debtor to maintain insurance, pay all taxes, and to maintain the equipment. Also, Debtor's wife executed a guaranty for each agreement. Finally, HPSC had to obtain the equipment from a third party supplier in order to have the equipment to lease. The court concludes from all of the above factors that the agreements in question are disguised security agreements not true leases.

■ Implicit in the court's finding is that Debtor's treatment of HPSC's claim regarding the dental equipment was proper; that is, treating the agreements as disguised security agreements. Moreover, because the agreements are in fact disguised security agree-

ments as proposed by Debtor in his plan and HPSC did not object to confirmation, then HPSC is bound by the confirmed plan. *See* 11 U.S.C. § 1327. However, assuming arguendo that the agreements were in fact leases, the court will now consider whether HPSC would be bound by Debtor's confirmed plan.

Section 1327 of the Bankruptcy Code ("Code") sets forth the effect of confirmation of a Chapter 13 plan. This section provides

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for in the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided for in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327.

■ Pursuant to this section, courts, including this one, have consistently held that "[a] creditor that had the opportunity to object that the plan did not meet the requirements for confirmation may not later assert any interest other than that provided for it by the confirmed plan." *In re Eason,* 178 B.R. 908, 912 (Bankr.M.D.Ga.1994) (citing *United States v. Norton,* 717 F.2d 767, 774 (3d Cir.1983)); *Multnomah County v. Ivory (In re Ivory),* 70 F.3d 73, 75 (9th Cir.1995); *Bright v. Ritacco (In re Ritacco),* 210 B.R. 595, 597 (Bankr.D.Or.1997); *In re Lee,* 182 B.R. 354, 358 (Bankr.S.D.Ga.1995); *In re Clark,* 172 B.R. 701, 703 (Bankr.S.D.Ga. 1994). Essentially, § 1327 "prevents a creditor from asserting after confirmation and during the term of the plan, any rights other than those provided for it by the confirmed plan." *In re Eason,* 178 B.R. at 912. Said another way, "[t]he only rights which may be asserted by a party after confirmation are those provided for in the plan." *In re Clark,* 172 B.R. at 703.

HPSC argues that it did not have notice of Debtor's intentions with regard to its claim involving the dental equipment that was the subject of the agreements in question. The court finds the facts to be to the contrary.[14] Debtor's plan expressly stated that Debtor proposed to pay HPSC a sum certain per month on claim secured by dental equipment. The court concedes that Debtor did not propose to treat any of HPSC's other collateral. However, Debtor's non treatment of that collateral, which arises from the October 27, 1994 security agreement, does not affect the treatment of the dental equipment. As a result, the court concludes that a careful reading of Debtor's plan should have put HPSC on notice that Debtor intended to treat the lease agreements concerning the dental equipment as disguised security agreements.

Furthermore, HPSC argues that "a Chapter 13 Plan cannot affect a creditor's *in rem* rights in property if the Plan does not 'provide for' the creditor's entire claim." *HPSC's brief page 2.* HPSC relies upon *In re Lee,* 182 B.R. 354 (Bankr.S.D.Ga.1995). The court, however, finds HPSC's reliance is misplaced. In *Lee,* the court stated that "[w]hether a secured creditor's in rem rights survive confirmation depends upon whether the claim is 'provided for' within the meaning of section 1327(a)."[15] *Id.* at 358. The court finds that Debtor's plan does provide for the claim in question; that is, the plan does provide for the dental equipment, which is the collateral that is the subject of the agreements before the court. The Debtor's plan does not make reference to any other

---

**14.** The court notes that in paragraph 6 of the motion for relief, HPSC states "The Debtor has ... proposed a plan which has been confirmed whereby Debtor seeks to cram down the lease and pay said amount at 9% interest." It appears to the court from this statement that HPSC did understand that Debtor intended to treat the agreements as disguised security agreements, cram down the value, and pay 9% interest.

**15.** In its brief HPSC contended that the plan must provide for the creditor's "entire claim." However, the court does not find language in *In re Lee* to support such a contention.

collateral with regard to HPSC. The court believes that the only reasonable interpretation of Debtor's plan is that Debtor intended to pay HPSC on the dental equipment only.

The court is satisfied that HPSC is bound by Debtor's confirmed plan. HPSC had notice of Debtor's proposed plan and did not object. HPSC should have objected to Debtor's plan. If, as HPSC alleged, these agreements were true leases, then HPSC would have had grounds to object to confirmation. *See In re Frady*, 141 B.R. 600, 602 (Bankr. W.D.N.C.1991) (Court would not confirm plan that improperly treated a true lease as a disguised sale). However, HPSC did not object and is bound by the confirmed plan.

*Conclusion*

The court finds that the two agreements entered into by Debtor and HPSC are in fact disguised security agreements, not true leases. Next, the court finds that, assuming the agreements are true leases, HPSC is bound by the treatment as set forth in Debtor's confirmed Chapter 13 plan; that is, treating the agreements as disguised security agreements and paying the claim accordingly. Moreover, the court finds that because the agreements in question are disguised security agreements, Debtor had no duty to accept or reject the agreements as if the agreements were true leases.

Finally, the court notes that HPSC moved for relief from stay because Debtor had failed to make payments in accordance with the agreement between the parties. However, because the court has found that HPSC is bound by Debtor's confirmed plan and HPSC has made no allegations that Debtor is not current in payments to the Trustee, the court will deny HPSC's motion for relief from stay.

An order in accordance with this Memorandum Opinion will be entered.

## ORDER

In accordance with the Memorandum Opinion issued this date, the court finds that two agreements, which purport to be leases, entered into between Debtor and HPSC, Inc. ("HPSC") are disguised security agreements. Moreover, the court finds that because HPSC did not object to confirmation of Debt-

or's Chapter 13 plan, it is bound by the terms of Debtor's confirmed plan. Accordingly, the court denies HPSC's motion for relief from stay.