**In the Matter of SUPER FEEDERS, INC., Debtor.**

**Bankruptcy No. BK99–40530.**

United States Bankruptcy Court, D. Nebraska.

June 30, 1999.

---

John J. Jolley, Jr., Omaha, NE, for Farm Credit Leasing Services Corp.

John C. Hahn, Lincoln, NE, for Debtor.

### *MEMORANDUM*

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This matter is before the Court upon Motion by Farm Credit Leasing Services Corporation ("FCL") for Order to Set Time by Which Debtor Must Assume or Reject Executory Contract (Fil. # 9), Resistance by Debtor (Fil. # 17), and Amended Motion for Order to Set Time by Which Debtor Must Assume or Reject Executory Contract (Fil. # 24). FCL's Motions are overruled because I conclude that the agreement between the parties constitutes a secured transaction and not a lease.

### *FACTS*

Debtor operates a swine nursery facility in Holt County, Nebraska. On October 8, 1997 debtor and FCL entered into a lease agreement (hereinafter "agreement") for fifteen complete and installed swine nursery buildings (hereinafter "leased property" or "facility") for the total price of $925,000.00. FCL purchased the leased property from various vendors and had it shipped to debtor's site in Holt County, Nebraska. The agreement does not give the lessee the right to terminate the lease, and it provides that debtor's obligation to pay all rentals, and perform all other obligations, is irrevocable.

The leased property was delivered by various vendors over a period of several months, with the debtor formally accepting delivery of the completed facility on March 18, 1998. The parties amended the agreement by executing an addendum on March 13, 1998, to provide that the debtor is to make eighty-four (84) monthly payments of $14,666.52 to FCL, with an option to purchase the leased property at the end of the payment period for $46,250.00. The facility will have a value of $225,000.00 at the end of the lease term.

On March 18, 1999, debtor commenced this Chapter 12 bankruptcy case. On March 29, 1999, FCL filed a Motion for Order to Set Time by Which Debtor Must Assume or Reject the Executory Contract (i.e., the agreement) (Fil. # 9). On April 26, 1999, FCL filed an Amended Motion for Order to Set Time by Which Debtor Must Assume or Reject Executory Contract (Fil. # 24).

### *DISCUSSION*

The threshold question before the Court is whether the agreement constitutes a lease governed by 11 U.S.C. § 365 or, alternatively, whether the agreement simply provides for the sale of the facility with the seller retaining a security interest to secure the unpaid purchase price. If the agreement constitutes a secured transaction and not a lease, FCL is not entitled to the special, preferential treatment accorded a lessor under § 365, and the motion to set a deadline for assumption or rejection would be denied. In that case, FCL would simply be treated as a secured creditor.

■ Whether an agreement constitutes a security agreement or a lease is determined under applicable state law. *In re Cook,* 52 B.R. 558, 560 (Bankr.D.N.D. 1985); *Wakefield v. Wakefield,* 217 B.R. 967, 970 (Bankr.M.D.Ga.1998).

Section 1–201(37) of the Nebraska Uniform Commercial Code provides in part:

Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods,

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement. . . .

■ Under this statutory definition, a lease creates a security interest if: (1) the lessee does not have the right to terminate the lease and is obligated to make payments for the full lease term, and (2) one of the four enumerated requirements are present. If the foregoing statutory test is met the agreement constitutes a security agreement as a matter of law. *In re Kim,* 232 B.R. 324, 330 (Bankr.E.D.Pa.1999).

This bright-line, economic test, supersedes the pre-amended § 1–201(37), which focused on the intent of the parties. *See* § 1–201(37), OFFICIAL COMMENT, ¶ 37; 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 30–3(b); *In re Homeplace Stores, Inc.,* 228 B.R. 88, 93 (Bankr.D.Del.1998).

■ The first requirement of the § 1–201(37) "bright-line" test is met because the agreement does not give the lessee the right to terminate and it provides that lessee's obligation to pay all rentals, and perform all other obligations, is irrevocable.

The requirement of § 1–201(37)(d) is also met because the agreement provides that the facility may be purchased at the end of the lease period for the nominal price of $46,250.00.

■ The option price is nominal for three (3) reasons. First, the $46,250.00 option price is nominal compared to the $925,000.00 purchase price of the facility. The present version of § 1–201(37) considers the "economic realities" of a given transaction. *In re Homeplace Stores, Inc.,* 228 B.R. at 93. "Under the 'economic realities' test, courts consider the relationship of the purchase option price to the original purchase or list price." *Kimco Leasing Inc. v. State Board of Tax Commissioners,* 656 N.E.2d 1208, 1215 (Ind. Tax 1995).

■ The original purchase price of the leased property was $925,000.00, and debtor has the option to purchase the leased property at the end of the lease term for the fixed price of $46,250.00. A fixed option price of 5% of the original purchase price, indicates nominal additional consideration. *See Kimco* 656 N.E.2d at 1215 ("A purchase option price less than twenty-five percent (25%) of the original purchase or list price constitutes evidence of a security interest.").

■ Second, the $46,250.00 option price is nominal compared to the $1,281,987.60[1] aggregate rental payments made under the agreement. When the option price is a relatively low percentage of the total lease payments, this indicates nominal consideration. *Orix,* 946 F.2d at 1261 (option price which is 12% of rental payments considered significant); *Wakefield,* 217 B.R. at 970 (option price which is 10% of rental payments considered significant in determining that option price is nominal); *Crowder v. Allied Inv. Co.,* 190 Neb. 487, 489, 209 N.W.2d 141, 143 (1973)(option price which is 4% of total consideration payable under agreement considered nominal).

---

1. *The total rental price is obtained by adding the total of the payments [eighty-four (84) payments of $14,666.52 which equals $1,231,-* 987.60] with debtor's down payment of $50,000.00.

Debtor's option purchase price is $46,-250.00, and the total of rental payments is $1,281,987.60. The option price is 3.60% of the total rental payments. By the end of the lease term debtor would have paid $1,281,987.60 for the use and possession of the facility for 84 months and from an economic perspective, would have no sensible alternative but to exercise the option, and pay only $46,250.00 to enjoy the facilities' remaining economic life. *Orix*, 946 at 1262, n. 3

■ Finally, and most persuasively, the option price is nominal compared to the value of the equipment at the end of the lease term. The facility will have a value of $225,000.00 at the end of the lease term. The $46,250.00 option price is only 20% of the value of the facility at the end of the lease term. An option price of 20% of actual value is also indicative of nominal value.

The bright-line test of § 1–201(37) is therefore met. The lessee must make payment for the full term of the lease, the lessee may not terminate the lease and the lessee may purchase the leased property for nominal consideration. Therefore, the transaction is a secured transaction and not a lease subject to § 365.

IT IS THEREFORE ORDERED, that FCL's Motion For an Order to Set Time by Which Debtor Must Assume or Reject Executory Contract (Fil. # 9) and Amended Motion For an Order to Set Time by Which Debtor Must Assume or Reject Executory Contract (Fil. # 24) are overruled.

IT IS SO ORDERED.