**In re Prima Lee DURHAM, Debtor.**

**Civ.A. No. 00–01655–W.**

United States Bankruptcy Court, D. South Carolina.

March 2, 2001.

---

**ORDER**

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Amended Objection and Motion to Reconsider Order of Confirmation (the "Motion") filed by GE Capital Auto Lease ("GECAL") on November 17, 2000. In the Motion, GECAL asserts that it is the holder of a Closed–End Motor Vehicle Lease Agreement whereby GECAL agreed to lease a 1998 Honda Accord to Prima Lee Durham ("Debtor") and further argues that Debtor's Chapter 13 Plan, which was confirmed on July 28, 2000, improperly valued the property, treating it as a sale transaction and disguised security agreement as opposed to a true lease, thus failing to comply with the applicable provisions of Title 11. After considering the pleadings in the matter and the arguments made by the parties at the hearing on the Motion, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R Civ P. 52, made applicable in bankruptcy proceedings by Fed. R. Bankr.P. 7052.[1]

**FINDINGS OF FACT**

1. On or about January 14, 1998, Debtor entered into a Closed–End Motor Vehicle Lease Agreement with Guaranteed Fixed Price Purchase Option with GECAL, wherein Debtor entered into an agreement to acquire a 1998 Honda Accord and make payments of $397.89 for forty-eight months, with an option to make a balloon payment of $11,301.30 at the end of the contract term.

2. On February 24, 2000, Debtor filed for relief under Chapter 13 of the Bankruptcy Code. Schedule D of Debtor's petition lists GECAL as holding a secured claim in the amount of $18,000 and implicitly characterizes the agreement with Debtor as a sale transaction and disguised security agreement. Furthermore, Debtor listed the value of the 1998 Honda Accord as $16,100.00.

---

1. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

3. On February 26, 2000, all parties in interest, including GECAL, were served with the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, and Deadlines (the "Notice"). The Notice set the deadline to file a Proof of Claim for all creditors, except governmental units, on July 13, 2000. Furthermore, notice was given that the hearing on confirmation of the Chapter 13 Plan was set for May 4, 2000.

4. On March 7, 2000, GECAL filed a Proof of Claim. The Proof of Claim states that the basis for claim is an "executory contract for lease of automobile" but also indicates that the claim is in the nature of a secured claim in the amount of $11,436.48.

5. On March 13, 2000, Debtor filed the Notice, Chapter 13 Plan, and Related Motions. The Chapter 13 Plan clearly treated GECAL's claim as a secured debt arising out of a sale transaction and security agreement and provided for the following.

Secured debt—Payments of $346.00 or more per month, to GE Capital Auto until the value of lien plus 10% interest has been paid in full. If lien is to be valued, the debtor hereby moves to value the lien at $16,100.00 in accordance with SC LBTR 3015–1 and the notice attached hereto. The basis of the debtor's value is as follows: The fair market value of the 1998 Honda Accord is less than the balance owed due to its age, mileage and repair status

6. The Chapter 13 Plan expressly warned GECAL that the Plan and Related Motions proposed to value its claim. More specifically, it provided in bold type: **"Review the plan and related Motions carefully to determine the treatment of your claim under the plan"**; it further added in regular font:

If an objection is filed within twenty-five (25) days after the date of filing and such timely objection is filed before the Confirmation Hearing, the objection will be heard at the Confirmation Hearing, notice of which is given in the Notice of Meeting of Creditors. If an objection is filed within twenty-five (25) days after the date of filing and such timely objection is filed after the Confirmation hearing, a hearing on the objection will be scheduled and notice of such hearing will be given.

If no objection is timely filed in accordance with SC LBR 9014–4, the court, upon the recommendation of the trustee and without further hearing or notice, may enter an order confirming the plan following the Meeting of Creditors (11 U.S.C. § 341 Meeting) and granting the other relief requested therein.

7. In the Plan, Debtor did not move for either assumption or rejection of any executory contracts or leases. The Plan provided that "[a]n executory contract or lease not specifically mentioned above is treated as rejected."

8. A copy of the Chapter 13 Plan and Related Motions filed on March 13, 2000 was properly served on GECAL, and there is no dispute as to the fact that GECAL received a copy of said Plan. However, GECAL never filed an objection to the Chapter 13 Plan filed on March 13, 2000 nor did it appear at the Confirmation Hearing to contest Debtor's treatment of its claim.

9. On July 28, 2000, the Court entered an Order Confirming Plan and Resolving Motions.

10. On October 23, 2000, Debtor filed a Notice of Plan Modification After Confirmation. The Amended Plan did not alter GECAL's treatment, rather, it provided the exact same treatment as was outlined in the Plan filed on March 17, 2000. The Amended Plan was served by regular mail

on GECAL and all other creditors and interested parties on October 21, 2000.

11. On November 7, 2000, GECAL, through his counsel, filed an Objection to Confirmation of Chapter 13 Plan and a Motion for Relief from Automatic Stay. In the Motion for Relief From the Stay, GECAL asserted that Debtor had defaulted under the terms of the Lease since July 20, 2000, and further requested that the Court modify the automatic stay and allow GECAL to immediately proceed to sell the collateral on the grounds that Debtor has no equity in the vehicle and that GECAL has received no payment from the Chapter 13 Trustee since the filing of the petition. Furthermore, GECAL objected to the confirmation of the Amended Plan on the ground that it failed to comply with the applicable provision of Title 11 in that it failed to assume the Lease as required by § 365.

12. On November 17, 2000, GECAL filed an Amended Objection and Motion to Reconsider Order of Confirmation in which it argued that Debtor holds only a leasehold interest in the vehicle at issue and has no ownership rights in said vehicle and requested that the Court reconsider the Order of Confirmation entered on July 28, 2000 and deny confirmation of the Amended Chapter 13 Plan.

13. On December 4, 2000, Debtor withdrew her Amended Plan.

14. At the hearing on the Motion to Reconsider Order of Confirmation and Motion for Relief From Automatic Stay, GECAL withdrew the latter motion, and argued the Motion to Reconsider Order of Confirmation, which is presently at issue in this Order.

## CONCLUSIONS OF LAW

In this case, GECAL has moved to reconsider the Order of Confirmation en-

tered on July 28, 2000 on the grounds that the Chapter 13 Plan, as confirmed, improperly treated it as a secured creditor and valued property in which Debtor only had a leasehold interest. Thus, the main issue before the Court is the res judicata effect of the confirmation of Debtor's Chapter 13 Plan filed on March 13, 2000 on GECAL's claim. More specifically, the Court is faced with the issue of whether GECAL should be allowed to challenge its treatment under a Plan which was confirmed approximately five months earlier without any objections from GECAL.

■■■ "Confirmation is the bright line in the life of a Chapter 13 case at which all the important rights of creditors and responsibilities of the debtor are defined and after which all rights and remedies must be determined with reference to the plan" *In re Sanders*, 243 B.R. 326, 330 (Bankr. N.D.Ohio 2000). Section 1327 sets forth the *res judicata* effect that a Chapter 13 has on creditors' rights by providing:

> (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
>
> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
>
> (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

This section essentially prevents a creditor from asserting any rights after confirmation other than the rights specifically provided for in the plan. *See, e.g. HPSC, Inc. v. Wakefield (In re Wakefield)*, 217 B.R.

967, 972 (Bankr.M.D.Ga.1998) (quoting *In re Eason,* 178 B.R. 908, 912 (Bankr. M.D.Ga.1994)) ("Pursuant to this section, courts, including this one, have consistently held that '[a] creditor that had the opportunity to object that the plan did not meet the requirements for confirmation may not later assert any interest other than that provided for it by the confirmed plan.' "). As some courts have noted:

> [T]he confirmed plan controls the debtor-creditor relationship unless and until the plan is modified or a creditor is relieved of its effects. This binding effect is every bit as compelling as a new agreement and is fully enforceable by the debtor so long as the debtor does not default under the plan.

*In re Sanders,* 243 B.R. at 330–31, *see also In re Eron,* C/A No 97–09639–D (Bankr. D.S.C.12/13/1999), *aff'd,* C/A No. 3:00–774–19 (D.S.C.9/13/2000). Despite the fact that a confirmed plan is generally viewed as *res judicata* as to all creditors, even if the plan did not meet one of the requirements for confirmation or the creditor failed to object to its treatment under said plan, courts usually recognize an exception to such finality if the creditor was denied due process for lack of notice. *See, e.g. Piedmont Trust Bank v. Linkous (In re Linkous),* 990 F.2d 160, 162 (4th Cir.1993) ("[A] bankruptcy court confirmation order generally is treated as *res judicata.* However, we cannot defer to such an order on *res judicata* grounds if it would result in a denial of due process in violation of the Fifth Amendment of the United States Constitution."); *Pope v. United Co. Lending Corp. (In re Pope),* C/A No. 93–71473–D, Adv. Pro No 97–80205–W (Bankr. D.S.C.12/15/1997). In order to meet the requirements of due process whereby a proceeding is accorded finality, the United States Supreme Court has noted that the required notice is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also In re Linkous* 990 F.2d at 162.

While courts have approached the issue of whether a plan is *res judicata* as to a creditor who failed to object to its treatment differently, "the common theme through all .. approaches is that of notice." *In re Basham,* 167 B.R. 903, 907 (Bankr.W.D.Mo.1994). The Fourth Circuit has considered such issues in several cases and has taken what some courts define as a "middle-of-the-road" approach which looks to the contents of the notice and considers the totality of circumstances in each case to determine whether reasonable notice was given to a creditor. *See, e.g. In re Basham,* 167 B.R. at 908; *Deutchman v. IRS (In re Deutchman),* 192 F.3d 457 (4th Cir.1999); *Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995); *Piedmont Trust Bank v. Linkous (In re Linkous),* 990 F.2d 160 (4th Cir.1993). Thus, in deciding whether the confirmed Chapter 13 Plan in this case is *res judicata* as to GECAL, who failed to timely object prior to confirmation, the pivotal issue the Court needs to focus on is whether GECAL received adequate notice that its rights would be modified by the Plan's treatment of its claim. The Court finds that the due process requirement was satisfied in this case.

In reaching this conclusion, the Court relies on precedent in this District that has considered the same issue and held that the creditor was not allowed to upset the implementation of the plan following confirmation. *In re Eron,* C/A No 97–09639–D (Bankr.D.S.C.12/13/1999), *aff'd,* C/A No. 3:00–774–19 (D.S.C.9/13/2000); *see also General Motors Acceptance Corp v. Butler (In re Butler),* C/A No. 99–04623–B; Adv. Pro 00–80170–B (3/1/2001). In *In re Eron,*

GECAL and Debtor had entered into a Closed–End Motor Vehicle Lease Agreement with Guaranteed Fixed Price Purchase Option wherein the debtors agreed to lease a 1997 Nissan Truck. The debtors subsequently filed for relief under Chapter 13 of the Bankruptcy Code on November 10, 1997 and listed GECAL as a secured creditor in the amount of $13,202.30. On November 21, 1997, the debtors filed a Chapter 13 Plan which treated GECAL's claim as a secured claim. The plan was later amended on February 5, 1998, providing for slightly lower payments to GECAL than proposed in the first plan. On December 19, 1997, GECAL filed its first proof of claim and then amended it on July 30, 1998. Similar to the Proof of Claim in the case presently before the Court, GECAL's proof of claim in *In re Eron* indicated that the basis for the claim was the lease agreement and further reflected that the claim was a secured claim in the amount of $3,100, consisting of the prepetition arrearage and lease payments for each of the remaining 16 months of the lease. GECAL never objected to either plan, and on March 19, 1998, the amended plan was confirmed by order of the court.

GECAL then requested the return of the vehicle and filed a motion for relief from the automatic stay after its request for the voluntary return of the truck proved unsuccessful. In denying GECAL's motion and concluding that the creditor should not be allowed to upset the implementation of the plan at such late stage, the court noted:

> Here, the amended plan clearly states how General Electric's claim would be treated and the interest rate that would be applied; the amended plan specifically provides for the claim by proposing the payment of $13,202 plus 8.25% interest. After General Electric has *twice received such notice* that the debtors

intended to pay the lease payments and to pay the residual value of the vehicle *in full* with interest, General Electric filed a proof of claim and, for more than eighteen moths, did not object to such treatment.

(Emphasis added). Furthermore, the court rejected GECAL's argument that its lease claim had not been properly treated. The court noted that for a plan to vest property in the debtor free and clear of any liens, § 1327(c) provides that the plan must "provide for" the lien. As defined in *Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995), "a plan 'provides for' a claim or interest when it acknowledges the claim or interest and makes explicit provision for its treatment." *Id.* at 94 (citing *In re Work,* 58 B.R. 868, 871 (Bankr.D.Or.1986)). In *In re Eron,* the court found that the plan "clearly stat[ed] how [GECAL]'s claim would be treated and the interest rate that would be applied, [thus] the amended plan specifically provid[ed] for the claim by proposing the payment of $13,202 plus 8.25% interest." Thus, the court ultimately concluded that GECAL, who failed to object to the Chapter 13 Plan and had accepted the payments under the Plan, should not be permitted to veto such confirmed plan. The decision in *In re Eron* was affirmed by the United States District Court.

A similar result has been reached by the court in *HPSC, Inc. v. Wakefield (In re Wakefield),* 217 B.R. 967 (Bankr.M.D.Ga. 1998). In that case, the debtor's Chapter 13 Plan proposed to treat the agreements that the debtor had entered into with the creditor as sale transactions and disguised security agreements rather than true leases. The creditor did not object to the plan's confirmation and the plan was confirmed. Subsequently, the creditor filed a motion for relief from stay contending that the debtor had failed to assume or reject

the leases and failed to make payments in accordance with the agreements with the creditor. The court concluded that the agreements at issue were disguised security agreements as proposed in the plan; however, it then proceeded to discuss whether the creditor would have been bound by the confirmed plan even if the agreements were deemed to be leases as opposed to disguised sales. In analyzing the *res judicata* effect that the plan had on the creditor, the Court focused on the sufficiency of the notice received and concluded that the creditor had notice of the proposed treatment and was bound by the confirmed plan. In so concluding the court noted.

> Debtor's plan expressly stated that Debtor proposed to pay [the creditor] a sum certain per month on claim secured by dental equipment... As a result, the court concludes that a careful reading of debtor's plan should have put [the creditor] on notice that debtor intended to treat the lease agreements concerning the dental equipment as disguised security agreements . . . .
>
> The court finds that Debtor's plan does provide for the claim in question; that is, the plan does provide for the dental equipment, which is the collateral that is the subject of the agreements before the court . .
>
> The court is satisfied that [the creditor] is bound by Debtor's confirmed plan [The creditor] had notice of Debtor's proposed plan and did not object. [The creditor] should have objected to Debtor's plan. If, as [the creditor] alleged, these agreements were true leases, then [the creditor] would have had grounds to object to confirmation

*Id.* at 972–73

■ This case presents facts almost identical to the *In re Eron* and the *In re Wakefield* cases discussed above. GE-

CAL, in fact, waited approximately five months after the confirmation of the Plan to appear and object on the ground that its claim was improperly treated as a sale transaction and disguised security agreement. After analyzing the totality of circumstances in this case and the language of the Plan that was served on all creditors and interested parties, the Court finds that the notice given to GECAL of the proposed treatment of its claim under the Plan satisfies due process requirements, therefore, the confirmation of said Plan is binding on GECAL. In making this determination, the Court notes that the timing of the filing of a creditor's proof of claim, either prior to or after confirmation, should not make a difference. As a commentator has noted.

> If the claims allowance process is commenced before confirmation, by the filing of a proof of claim, a properly noticed plan that is inconsistent with a creditor's claim is indistinguishable from an objection to that claim. To require the debtor to separately file a written objection to a proof of claim when precisely the same contest is presented in the notice for the hearing on confirmation elevates form over substance.

Keith M Lundin, *Chapter 13 Bankruptcy* 233–45 (3d ed.2000). To conclude otherwise would be to conclude that a properly constructed and noticed Chapter 13 plan cannot treat the claim of creditors as provided in § 1322(b)(2).

■ In reaching this conclusion, the Court first notes that the determination of whether a transaction constitutes a true lease or a disguised security agreement is a matter of state law and one which is often dependent upon the peculiar facts of each creditor-debtor relationship. *See, e.g. In re Simpson*, C/A No. 00–05566–W (Bankr.D.S.C.11/27/2000); *In re Smith*, 00–06071–W (Bankr.D.S.C.11/27/2000). In

making such a determination, the Court considers several factors including: (1) whether there is an option to pay nominal consideration at the end of the contract term, (2) whether the debtor may terminate the agreement without paying a sum certain, (3) whether the total amount of the payments under the agreement exceeds the value of the vehicle; (4) whether the debtor is obligated to maintain and repair the collateral, (5) whether the creditor is in the business of selling such goods, and (6) whether the title is in the debtor. Aside from those objective factors, the Court also examines the intent of the parties at the time they entered into the agreement. *See, e.g. In re Simpson,* C/A No. 00–05566–W (Bankr.D.S.C.11/27/2000) Thus, because subjective factors are also essential to such determination, a debtor often has a justifiable legal argument for proposing to treat an agreement as a sale as opposed to a lease. In a Chapter 13 case, such issue of whether an agreement is a lease or a disguised sale may be raised in a variety of contexts including in a confirmation hearing, hearing on a motion for relief from the automatic stay, hearing on an objection to a proof of claim, or a hearing on a motion to compel or reject the assumption of a lease; all matters which are passively noticed and matters dependent upon the filing of an objection or response to trigger an evidentiary hearing before the Court. *See, e.g. In re Simpson,* C/A No. 00–05566–W (Bankr.

D.S.C.11/27/2000) (analyzing the issue in the context of an objection to confirmation of plan and valuation), *In re Smith,* 259 B.R. 561 (Bankr.D.S.C.2000) (same); *In re Carter,* C/A No. 99–7461–D (Bankr D.S.C. 11/15/1999) (determining whether an agreement was a security agreement or a lease in the context of a motion for relief from the automatic stay).

The quality of the notice and opportunity to object to a plan and the manner in which the hearing on any objection is conducted is no less formal than the procedure followed for these other motions, including objections to claims. Thus, the most important issue to consider is the adequacy of the notice. "If the summary or copy of the plan unmistakably puts the creditor on notice that the plan treats the creditor's claim in a manner that is inconsistent with that creditor's proof of claim, notice of the hearing on confirmation serves all the purposes that would be served by requiring the debtor to file a separate objection to the proof of claim." Keith M Lundin, *Chapter 13 Bankruptcy* 233–45 (3d ed.2000). Additionally important, in this case Debtor proposed to treat the agreement with GECAL as a sale transaction and disguised security agreement, and the Court finds that she had a justifiable legal argument for taking that position and providing for such treatment in the Plan.[2]

---

**2.** This case is thus distinguishable in its facts from *Deutchman v. IRS (In re Deutchman),* 192 F.3d 457 (4th Cir.1999) where the court concluded that the debtor did not take a sufficient affirmative step to modify the IRS's liens but rather attempted to "camouflage" the treatment of the IRS's lien in the plan where there was no basis for such treatment. The court in that case noted:

Deutchman has not satisfactorily explained the basis for reducing the IRS's secured claim, or for eliminating the presumably valid liens upon his property. There is no indication that he believed that the liens were invalid or that the claim was not legitimate. Nor is there any reason to believe that the property securing the claim was of insufficient value to secure any portion of the claim. Rather, it appears that Deutchman simply attempted to eliminate valid liens securing an unchallenged claim by calling the claim something that everyone agrees it was not—a § 507 unsecured priority claim.

*Id.* at 460 n. 2

In this case, Debtor's treatment of GE-CAL's claim as a secured debt based upon a disguised security agreement was clear and the Plan specified that Debtor was proposing to value GECAL's lien at $16,100.00 and was further proposing to make monthly payments to GECAL of $346.00 until the value of the lien plus 10% interest had been paid in full. The Plan filed by Debtor is the form plan used in this District and required by Local Rule 3015–1(a). It also allows a debtor to make various related motions that affect creditors' interests in conjunction with the plan. In fact, in a plan a debtor can move to value collateral or to avoid judicial liens or nonpurchase money security liens, and must determine to assume or reject an executory contract or lease, including providing terms of the cure of any default and adequate assurance of future performance, terms of critical importance to any creditor which claims a true lease relationship with the debtor. In this case, even a cursory review of Debtor's Plan would have put any party on proper notice that Debtor intended to treat the alleged lease agreement as a disguised sale transaction and to pay GECAL a monthly payment until the value of its claim plus interest was paid in full. GECAL, as a sophisticated lender who has claims based on similar agreements in numerous Chapter 13 cases in this district, some of which it views as leases while others it views as disguised security agreements; knew or should have known that the Plan would have significantly affected its claim. This is especially true in this instance because GECAL had taken a formal position by the filing of its proof of claim that its claim was based on a true lease.

▮ Upon finding that a creditor has adequate notice of and opportunity to ob-ject to a plan which is clear in its terms, a Chapter 13 plan is a sufficient and appropriate affirmative step to address a proof of claim filed by a creditor. Put another way, no additional or separate objection to the proof of claim is necessary or practical if the creditor has sufficient notice that the Plan proposes to treat its claim differently than in the manner in which it was filed.[3] As some commentators have emphasized, the pivotal issue is not whether the claim process prevails over the plan confirmation process or vice versa. Rather, "[t]he issue is, did the creditor have sufficient notice of the plan and opportunity to object such that confirmation has the effects described in § 1327(a), (b), and (c)?". Keith M. Lundin, *Chapter 13 Bankruptcy* 233–43 (3d ed.2000). In this case, GECAL should have made some response or appearance to specifically object to the Plan at or before the confirmation hearing rather than waiting until after the Plan was confirmed to challenge its treatment. By failing to timely object to the Plan when in fact it received proper notice, GECAL acted at its peril and cannot be excused for failing to respond to Debtor's treatment of its claim.

Of primary importance to the Court in this case is the fact that GECAL does not assert that it did not receive a copy of the plan or that the language or structure of the plan describing Debtor's proposed treatment of its claim was confusing, ambiguous, or inconsistent, nor did it raise any grounds for relief from judgment as might be raised pursuant to Fed. R. Civ P. 60. Rather, GECAL's argument mainly revolves around the notion that it is not bound under any circumstance by any confirmed plan which treats its claims differently than its Proof of Claim asserts. GE-CAL's argument implies a technical lack of

---

**3.** The service of the Plan in this case meets the requirements of Fed. R. Bankr.P. 3007 in as much as it was in writing and filed with the Court and served upon the claimant and trustee more than thirty (30) days prior to the confirmation hearing on May 4, 2000.

notice without a demonstration of any actual deficiencies in the notice it received in this case. The Court disagrees with GECAL's argument and finds that the language of the Plan sufficiently indicated that GECAL's claim was not going to be treated as a lease but rather as a secured debt based upon a disguised security agreement, pursuant to which monthly payments were being proposed. Furthermore, the Court finds that § 1327 cannot be read so as to provide such broad deference to a sophisticated creditor with adequate notice which fails to timely object to the plan.

This case is thus different in important facts from the situations addressed in the Fourth Circuit cases of *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160 (4th Cir.1993) and *Deutchman v. IRS (In re Deutchman)*, 192 F.3d 457 (4th Cir. 1999), in which the court found that the due process rights of the creditors were violated due to the inadequacy of the notice of the plan. In *In re Linkous*, the debtor's plan proposed to treat the creditor's loans as secured only to the extent of the collateral's fair market value pursuant to § 506(a). The debtor mailed a summary of the Chapter 13 plan to the creditor: however, such summary only provided a brief account of the payments to be made to the trustee and did not explicitly state how each creditor's claim was to be treated. The creditor failed to object to the plan and the plan was confirmed. Subsequently to such confirmation, the creditor moved to revoke the order confirming plan. Similarly, in *In re Deutchman*, the Court noted that, due to the inconsistent treatment of the IRS's claim specified in the plan, it could not be deemed to provide

adequate notice and concluded that "[d]eceptive information is equivalent to no notice at all, and for lack of specific notice, Deutchman's efforts fail." *Id.* at 461. Unlike the factual situations in *In re Linkous* and *In re Deutchman*, in this case, GECAL received a full copy of the original Plan filed on March 13, 2000, which clearly provided that GECAL's claim was to be treated not as a lease but as a sale transaction and disguised security agreement. Furthermore, the language of the Plan was consistent in that it moved to value GECAL's lien and failed to move for the assumption or rejection of any leases.

■ The Court thus finds that the Plan properly "provided for" GECAL's claim and further constituted adequate notice that its claim would be affected. The Court acknowledges the fact that a debtor has certain burdens among which is the duty to properly inform a creditor of an intent to reclassify its claim. *See, e.g. In re Linkous*, 990 F.2d 160, 163 (4th Cir. 1993). However, the creditor also bears certain responsibilities, and cannot "stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings." *Id.* (quoting *In re Pence*, 905 F.2d 1107, 1109 (7th Cir.1990)). In this case, GECAL filed a Proof of Claim which indicated that it was the holder of a secured claim based upon a lease in the amount of $11,436.48.[4] In turn, Debtor filed a Chapter 13 Plan which clearly reclassified GECAL's claim. However, GECAL, which received a copy of the Plan and was provided with proper and adequate notice of its claim's treatment under the Plan, neglected to timely respond to this treatment, although it had sufficient time and opportunities to do so. Under

---

**4.** The language of the Proof of Claim appears somewhat inconsistent in that it specified the basis for the claim as an "executory contract for lease of automobile" and further specified at the bottom that the "claim is for lease

payments of $397.89 for lease term remaining of 24 months plus prepetition arrearages" and yet reflected a secured claim in the amount of $11,436.48.

the circumstances of this case, this Court is not inclined to allow GECAL, who "slept" on its rights, to veto the effect of the confirmation.[5]

## CONCLUSION

From the arguments discussed above, it is therefore;

**ORDERED** that the Amended Objection and Motion to Reconsider Order of Confirmation filed by GECAL on November 17, 2000 is denied.

**AND IT IS SO ORDERED.**

5.  As a practical matter, the issue of whether an agreement is a true lease or a disguised security agreement arises frequently in bankruptcy cases in conjunction with consumer transactions entered into by national sophisticated creditors and regarding a wide range of collateral, including real estate and automobiles and even furniture and appliances. Furthermore, as stated earlier, these issues arise in a variety of proceedings, other than adversary proceedings, such as motions for relief from the stay, motions to assume or reject a lease, objections to claims, or objections to confirmation hearings which are often initiated by the creditor and which turn on the factual circumstances of each case. This Court finds that in order to maintain the efficiency of bankruptcy proceedings and the finality notion of the confirmation process, where a creditor receives actual and proper notice of its claim's treatment under a plan, it should timely respond if it disagrees with such treatment or otherwise be bound by it. To hold otherwise would significantly delay the Chapter 13 case administration system favored by Congress and delay the time under which the system operates to provide timely payments to creditors and to insure each debtor's reorganization and "fresh start".