In re Charles Henry HOSKINS, Jr. Sylvia Kaye Hoskins, Debtors.

Ford Motor Credit Company, Plaintiff,

v.

Charles Henry Hoskins, Jr. and Sylvia Kaye Hoskins, Defendants.

Bankruptcy No. 01–42481–13.
Adversary No. 01–4120.

United States Bankruptcy Court, W.D. Missouri.

Aug. 27, 2001.

Jay P. Yancey, Kansas City, MO, for Ford Motor Credit Company.

Dennis G. Muller, Kansas City, MO, for Charles and Sylvia Hoskins.

Richard V. Fink, Kansas City, MO, Chapter 13 Trustee.

### MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

In the matter presently under consideration, the Court must determine whether an agreement between Ford Motor Credit Company, as assignee, and Charles and Sylvia Hoskins is a true lease or security for a conditional sales contract. For the following reasons, the Court determines that the agreement is a true lease, and rules in favor of Ford Motor Credit Company in this adversary proceeding.

### Factual Background

On May 24, 2001, Charles Henry Hoskins, Jr. and Sylvia Kaye Hoskins filed a voluntary petition for rehabilitation under Chapter 13 of the Bankruptcy Code. At that time, a lawsuit was pending in the Associate Judge Division of the Circuit Court of Jackson County, Missouri that had been filed by Ford Motor Credit Company ("Ford") against the Hoskins seeking to recover a deficiency balance in the amount of $3653.81, plus interest and attorney's fees, remaining due following the sale of an automobile that the Hoskins has voluntarily surrendered to Ford after defaulting in making payments. The Hoskins filed an answer and a counterclaim in the action asserting that Ford was not entitled to recover the deficiency balance and that they were entitled to damages under Article 9 of the Missouri Uniform Commercial Code based upon Ford's failure to properly notify both of them of the pending sale of the automobile. Subsequent to the bankruptcy filing, Ford filed a Notice of Removal of the Jackson County, Missouri action to the United States District Court for the Western District of Missouri. By Order dated June 18, 2001, the Honorable Howard F. Sachs referred this matter to the United States Bankruptcy Court for the Western District of Missouri, and the adversary proceeding was assigned to the undersigned. On August 2, 2001, a hearing was held at which time the parties agreed that the Court could decide the matter based on the pleadings, including Ford's motion for summary judgment and the Hoskins' opposition thereto, that had been filed in the Jackson County, Missouri action, copies of which have been filed in this adversary proceeding.

The documents supplied by the parties provide the following pertinent information. On November 8, 1997, Charles and Sylvia Hoskins entered into a written contract with Southtown Ford, Inc. entitled "Motor Vehicle Lease Agreement" to "lease" a new 1998 Ford Windstar for a period of 24 months. Charles and Sylvia Hoskins were designated as "Lessee" and "Co–Lessee" in the contract, and Southtown Ford, Inc. was designated as "Lessor". After execution, Southtown Ford, Inc. assigned this contract to Ford. The contract stated that " 'Ford Credit' is Ford Motor Credit Company. The 'Holder' is FMCC and its assigns. By signing 'You' (Lessee and Co–Lessee) agree to lease this Vehicle according to the terms on the front and back of this lease."

The contract obligated the Hoskins to make payments in the amount of $596.58 per month for 24 months. A portion of each monthly payment was designated as "rent charge" in the total amount of $4010.48 for the 24–month term. Over the 24–month period the Hoskins were obligated to pay Ford the total amount of $9420.00, which was designated as depreciation for the vehicle's decline in value through normal use. The agreed upon value of the vehicle on the date of execution of the contract was $26,434.48. After payment of all amounts due under the contract, the residual value of the vehicle would be $15,013.60 at the end of the 24–month term. The contract provided that at the end of the "Lease Term" the Hoskins had the option to purchase the vehicle for $15,263.60, plus official fees and taxes, as long as they had not defaulted or terminated the lease early.[1]

The contract further provided that the vehicle was covered by a standard new vehicle warranty; placed the responsibility for maintenance of the vehicle and repairing damage to the vehicle upon the Hoskins; required the Hoskins to pay all license, title and registration costs; and obligated the Hoskins to insure the vehicle during the lease term. The contract provided for early termination of the lease term, however, in the event of early termination the Hoskins still would be required to pay the remaining sums due under the lease (the amount due depended upon several factors), plus a $200.00 early termination fee. The contract provided that, among other things, the Hoskins would be in default if they failed to make any of the payments when due. Pursuant to the terms of the contract, if the Hoskins defaulted, Ford could cancel the lease, repossess the vehicle and sell it at a public or private sale. The contract was silent regarding Ford's obligation to notify the Hoskins of any proposed sale of the vehicle following default and repossession. Upon default, the Hoskins would also be liable to pay the remaining sums due under the lease (once again the amount due depended upon several factors), plus other expenses incurred by Ford and reasonable attorney's fees. Finally, the contract provided that the vehicle would be titled in the name of Ford.

The Hoskins ceased making payments after March 18, 1999, and on May 28, 1999, they voluntarily surrendered the vehicle to Southtown Ford, Inc. On June 3, 1999, Sylvia Hoskins signed a Voluntary Surrender form in which she acknowledged that she was voluntarily surrendering possession of the 98 Ford Windstar to Ford and that she understood that Ford would sell the vehicle. The Voluntary Surrender form also provided that Sylvia Hoskins

---

1. There is no explanation in the contract why the purchase option price is $200.00 higher than the residual value.

agreed to pay Ford for any deficiency resulting from the sale. On or about June 1, 1999, Ford sent Sylvia Hoskins a Red Carpet Lease Notice of Private Sale informing her that the vehicle would be sold by Ford at a private sale. This Notice of Private Sale again informed Sylvia Hoskins that she might be held liable if a deficiency resulted from the sale. Ford did not notify Charles Hoskins of the pending sale. On June 23, 1999, Ford sold the vehicle through a private sale. After crediting the Hoskins' account with the proceeds of the sale, a deficiency balance remained due in the amount of $3653.81. On August 24, 2000, Ford filed a lawsuit in the Jackson County, Missouri Circuit Court against the Hoskins seeking to recover this deficiency. The Hoskins filed an answer in which they contended, in relevant part, that Ford was not entitled to recover the deficiency balance remaining after the sale of the vehicle alleging that Ford had violated section 400.9–504 of the Missouri Uniform Commercial Code by failing to properly notify Charles Hoskins of the pending sale of the vehicle. The Hoskins also filed a counterclaim in which they asserted that because Ford had failed to properly notify Charles Hoskins of the pending sale of the vehicle, they were entitled to recover damages from Ford in the amount of $4952.48 pursuant to section 400.9–507 of the Missouri Uniform Commercial Code. In their response to Ford's motion for summary judgment, the Hoskins conceded that Ford had properly notified Sylvia Hoskins of the pending sale of the vehicle, but asserted that any recovery against her was subject to discharge under the Chapter 13 proceedings.

*Discussion*

■ The Hoskins do not dispute that a deficiency balance in the amount of $3653.81 remained after Ford sold the 1998 Ford Windstar. The determinative question is whether the written agreement between the Hoskins and Ford, as assignee, is a true lease or security for a conditional sales contract. If the agreement constitutes a true lease then Article 2A of the Missouri Uniform Commercial Code governs, and Article 2A does not require that notice of a pending sale of leased property be sent by the lessor to the lessee upon the lessee's default. *See* Mo.Rev. Stat. § 400.2A–501 and § 400.2A–502 (1994). Further the parties' contract does not provide for notice of sale to the Hoskins in the event of default. Accordingly, Ford would be entitled to a judgment against the Hoskins for the deficiency balance, and allowed to pursue recovery of same from the Hoskins to the extent permitted by the Bankruptcy Code, 11 U.S.C. §§ 101–1330. If, on the other hand, the agreement constitutes security for a conditional sales contract then Article 9 of the Missouri Uniform Commercial Code governs, and Ford was required to follow the procedures set forth in Mo.Rev.Stat. § 400.9–504 (1994) following the Hoskins' default, or face the consequences of its noncompliance, including an award of damages in favor of the Hoskins, *see* Mo.Rev. Stat. § 400.9–507 (1994), and denial of recovery of the deficiency balance, *see In re Huffman*, 204 B.R. 562, 563–64 (Bankr. W.D.Mo.1997); *McKesson Corp. v. Colman's Grant Village, Inc.*, 938 S.W.2d 631, 633 (Mo.App.1997).

■ "To determine a debtor's property rights, such as an interest in a lease, the bankruptcy court is required to look to state law." *Brown v. Kempker (In re Kempker)*, 104 B.R. 196, 202 (Bankr.W.D.Mo.1989)(quoting *Johnson v. First Nat. Bank of Montevideo, Minn.*, 719 F.2d 270, 273 (8th Cir.1983)). Section 400.2A–103(1)(j) of the Missouri Uniform Commercial Code defines "lease" to mean "a transfer of the right to possession and

use of goods for a term in return for consideration, but a ... retention or creation of a security interest is not a lease." Mo.Rev.Stat. § 400.2A–103(1)(j) (1994). Section 400.9–102(2) of the Missouri Uniform Commercial Code states in relevant part that Article 9 "applies to security interests created by contract including ... [a] lease ... intended as security." Mo. Rev.Stat. § 400.9–102(2) (1994). The term "security interest" is defined in section 400.1–201(37) of the Missouri Uniform Commercial Code, and in 1992 was amended to provide in pertinent part that:

(37) **"Security Interest"** means an interest in personal property or fixtures which secures payment or performance of an obligation....

Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods,

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

A transaction does not create a security interest merely because it provides that

(a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,

(b) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,

(c) the lessee has an option to renew the lease or to become the owner of the goods,

(d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

(e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

For purposes of subsection (37):

(x) Additional consideration is not nominal if (i) when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed, or (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee's reasonably predictable cost

of performing under the lease agreement if the option is not exercised;

(y) **"Reasonably predictable"** and **"remaining economic life of the goods"** are to be determined with reference to the facts and circumstances at the time the transaction is entered into; and

(z) **"Present value"** means the amount as of a date certain of one or more sums payable in the future, discounted to the date certain. The discount is determined by the interest rate specified by the parties if the rate is not manifestly unreasonable at the time the transaction is entered into; otherwise, the discount is determined by a commercially reasonable rate that takes into account the facts and circumstances of each case at the time the transaction was entered into.

Mo.Rev.Stat. § 400.1–201(37) (1994).

The comment to section 400.1–201(37) explains that the amendment was adopted because:

Prior to this amendment, Section 1–201(37) provided that whether a lease was intended as security (*i.e.*, a security interest disguised as a lease) was to be determined from the facts of each case; however, (a) the inclusion of an option to purchase did not itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee would become, or had the option to become, the owner of the property for no additional consideration, or for a nominal consideration, did make the lease one intended for security.

Reference to the intent of the parties to create a lease or security interest has lead to unfortunate results. In discovering intent, courts have relied upon factors that were thought to be more consistent with sales or loans than leases.

Most of these criteria, however, are as applicable to true leases as to security interests. Examples include the typical net lease provisions, a purported lessor's lack of storage facilities or its character as a financing party rather than a dealer in goods. Accordingly, amended Section 1–201(37) deletes all reference to the parties' intent.

Mo.Rev.Stat. § 400.1–201(37) (1994), Uniform Commercial Code Comment.

This Court was unable to locate any Missouri appellate court case, Missouri bankruptcy court case or Eighth Circuit Court of Appeals case that has addressed the issue of true lease versus security interest in the context of section 400.1–201(37) of the Missouri Uniform Commercial Code as amended in 1992. However, there are several cases on point from bankruptcy courts applying the law of states that have adopted the same amendment to section 1–201(37) as did Missouri which provide guidance to this Court in construing Missouri's amended statute.

In *Banterra Bank v. Subway Equip. Leasing Corp. (In re Taylor)*, 209 B.R. 482 (Bankr.S.D.Ill.1997), a dispute arose over whether an equipment lease was a true lease or a disguised security agreement. In ruling that the contract at issue was a security agreement, the bankruptcy court applied Illinois law and opined:

In any analysis under § 1–201(37), the intent of the parties is no longer the primary consideration. Rather, the focus is on the "economic realities" of the transaction.... Under this approach, the lease will be construed as a security interest as a matter of law if the debtor cannot terminate the lease *and* one of the enumerated requirements is satisfied.... If the Court determines that the transaction is not a disguised security agreement *per se*, it must then look at the specific facts of the case to deter-

mine whether the "economics of the transaction" suggest such a result.... *Id.* at 484–85 (citations omitted; emphasis in original). *See also In re Macklin*, 236 B.R. 403, 406 (Bankr.E.D.Ark.1999)(applying Arkansas law)("If the lease is not subject to termination by the lessee and one of [the] four additional conditions [enumerated in section 1–201(37)] also exist, the transaction is a sale with a security interest as a matter of law."); *In re Kim*, 232 B.R. 324, 329, 330 (Bankr.E.D.Pa.1999)(applying Pennsylvania law)("The revised [section 1–201(37)] seeks to correct the shortcomings of its predecessor by focusing the inquiry of the lease/security interest analysis on the economics of the transaction rather than on the intent of the parties.... For leases which satisfy the ... test [in section 1–201(37)] the ... inquiry comes to an end—such leases constitute security agreements as a matter of law."); *In re Yarbrough*, 211 B.R. 654, 657 (Bankr.W.D.Tenn.1997)(applying Mississippi law)("[W]hile subjective intent used to be the standard by which courts determined whether a transaction was a lease or security interest, under the new definition [of section 1–201(37)] courts look only to the economic realities of the transaction.").

In *In re Owen*, 221 B.R. 56, 60–61 (Bankr.N.D.N.Y.1998), the bankruptcy court applying New York law explained that the first paragraph of section 1–201(37):

> set[s] out a bright line test whereby, as a matter of law, a transaction creates a security interest. Thus, if the Debtors do not have a right to terminate the purported lease prior to the expiration of its term, then the Court is to examine whether any of the four other enumerated conditions have been met which would establish that the parties entered into a security agreement....

The court further interpreted section 1–201(37) to mean that if the debtor can terminate the lease, then the court need not consider the four factors in order to find that as a matter of law the parties' agreement does not create a security interest, however, the four factors are relevant in the court's continuing examination of the facts of the particular case to determine whether the contract constitutes a security agreement. *Id.* at 61.

■ Applying the foregoing analysis to this case, this Court first must determine whether the Hoskins had a right to terminate the agreement with Ford. The Court finds that although the contract provides a means by which the Hoskins could terminate the lease early, the Hoskins could not simply return the vehicle to Ford and then walk away from the transaction with no further future financial responsibility. Upon early termination and return of the vehicle, the Hoskins were still liable to Ford for the balance of the remaining payments that were due under the lease; the final amount due and owing depended on variable factors. The Court concludes that a termination provision in a contract which provides that a lessee remains financially liable to the lessor after termination of the lease for payments that become due after the date the lease is terminated does not constitute "termination" within the meaning of section 1–201(37). The Court finds that the Hoskins could not terminate the agreement with Ford, which satisfies the first criteria for finding a security agreement as a matter of law.

■ Next, the Court must determine whether any of the four enumerated conditions set forth in section 400.1–201(37) have been satisfied. Relevant here is whether the option price required to purchase the 1998 Ford Windstar at the expiration of the lease term constituted nominal consideration. In *Banterra Bank v.*

*Subway Equip. Leasing Corp. (In re Taylor),* the bankruptcy court opined:

> Section 1–201(37)(x) of the Illinois Uniform Commercial Code provides, in pertinent part, that additional consideration is nominal if "it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised." ... This codification of what has traditionally been referred to as the "economic realities" test focuses on whether the lessee has, in light of all of the facts and circumstances, no sensible alternative but to exercise the purchase option.... Under this test, if only a fool would fail to exercise the purchase option, the option price is generally considered nominal and the transaction characterized as a disguised security agreement.

*Banterra Bank,* 209 B.R. at 486 (citations omitted). *See also In re Copeland,* 238 B.R. 801, 804 (Bankr.E.D.Ark.1999)(applying Arkansas law)("If a lessor cannot reasonably expect to receive back anything of value at the end of the lease term, then there is no residual value in the lessor and the transaction may be a sale and security interest."); *In re Super Feeders, Inc.,* 236 B.R. 267, 270 (Bankr.D.Neb.1999)(applying Nebraska law)("Under the 'economic realities' test, courts consider the relationship of the purchase option price to the original purchase or list price."); *Kempker,* 104 B.R. at 203 (This case was decided prior to the 1992 amendment to section 400.1–201(37) of the Missouri Uniform Commercial Code, however, this Court acknowledged that "[t]he 'economic realities test' ... examines whether the terms of the lease and purchase option are such that the only sensible economical course for the lessee at the end of the lease term is to exercise the option and become the owner of the goods. If this is the case, the lease is actually a secured installment sale.").

In this case, the contract provided that the agreed upon value of the vehicle on the date of execution of the contract was $26,434.48. The agreement further provided that at the expiration of the 24–month term of the contract, the Hoskins had the option to purchase the vehicle for $15,263.60. The Court finds that the purchase option price of $15,263.60 does not constitute nominal consideration. Because neither of the four factors is satisfied, the document at issue herein is not a security agreement as a matter of law.

■ However, the Court's inquiry does not end. Although the contract does not constitute a security agreement as a matter of law, the Court must examine the specific facts of this case to determine whether the "economics of the transaction" suggest such a result. Guiding this Court's decision are a consideration of the four factors enumerated in section 400.1–201(37) along with the additional guidelines set out in the statute. Further, although the cases cited by the parties and unearthed by this Court's research were decided in the context of a version of section 400.1–201(37) of the Missouri Uniform Commercial Code that preceded the 1992 amendment, the factors relied upon by the courts in those cases when deciding whether a document was a true lease or a security agreement are still relevant, to the extent they are consistent with amended section 400.1–201(37), to a determination of whether under the facts of a particular case the transaction is a lease or security for a conditional sales contract.

■ In *Commercial Credit Equip. Corp. v. Parsons,* 820 S.W.2d 315, 319 (Mo.App. 1991), the Missouri Court of Appeals opined that "the true character and intention of the agreement is determined not from random phrases or formal designations—such as 'lease,' 'lessor,' 'lessee,' but from the economic reality of the agree-

ment, whatever the disguise of the terminology." Under Missouri law, the pivotal factor in determining whether an instrument is a true lease or a security agreement is whether or not the lessee has an absolute obligation to purchase the rental property. *See Carlson v. Tandy Computer Leasing*, 803 F.2d 391, 396 (8th Cir.1986)(quoting *RCA Corp. v. State Tax Commission*, 513 S.W.2d 313, 316 (Mo. 1974))("[A]n agreement in which a purchase option existed was only a lease because '[t]here is no absolute obligation on the [lessee] to purchase, pay for, or assume title to the equipment.'" . . .)(emphasis in original). *See also National Can Servs. Corp. v. Gateway Aluminum Co., Inc.*, 683 F.Supp. 719, 727 (E.D.Mo. 1988)("Of significance is the character of the parties' rights to purchase or retain the equipment either at expiration or at termination prior to expiration of the lease."); *In re Morris*, 150 B.R. 446, 448 (Bankr.E.D.Mo.1992)("[T]he existence of an **absolute obligation** by the lessee to purchase rental property is the touchstone in determining whether a security interest was intended.")(emphasis in original).

Here, the Hoskins did have an option to purchase the 1998 Ford Windstar at the expiration of the lease term provided they were not in default and had not terminated the lease early. However, they did not have an absolute obligation to purchase the vehicle. If the Hoskins had fulfilled their contractual obligations under the agreement, whether they purchased the vehicle at the end of the lease term was entirely up to them. Further, as discussed above, the purchase option price of $15,263.60 was not nominal consideration. Accordingly,

based on the facts of this case, the Court finds that the agreement in question constitutes a true lease and not a disguised security agreement. In accordance with the guidelines established in amended section 400.1–201(37), the Court determines that the Hoskins' obligation to insure the vehicle during the lease term, maintain and repair the vehicle and pay all license, title and registration costs does not transform the lease into security for a conditional sales contract. In sum, the Court finds that the agreement in question constitutes a true lease.[2]

## Conclusion

Based on the above discussion, the Court determines that the Motor Vehicle Lease Agreement entered into between Charles and Sylvia Hoskins and Ford Motor Credit Company, as assignee, is a true lease and is not security for a conditional sales contract. Accordingly, Ford Motor Credit Company is entitled to a judgment against Charles and Sylvia Hoskins in the amount of $3653.81 for the deficiency balance remaining after the sale of the 1998 Ford Windstar. Ford Motor Credit Company may pursue recovery of same to the extent permitted by the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Fed. R. Bankr.P. 7052.

---

2. Because the document constitutes a true lease, the Hoskins' assertion that Ford failed to state sufficient facts to state a cause of action pursuant to Mo.Rev.Stat. § 408.556 (2001), must also fail. Section 408.556.1 requires a plaintiff/lender seeking to recover a deficiency from the borrower to allege facts sufficient to show compliance with the default provisions of Article 9 of the Missouri Uniform Commercial Code. Because the instrument at issue is a true lease, Article 9 does not apply.