## IN RE: LaRita Jean HARRIS, Debtor.

### Case No. 15–43667–13–abf

United States Bankruptcy Court,
W.D. Missouri.

Signed 04/18/2016

---

74. Dkt. 149, pg. 62 ¶ 115.

75. Dkt. 124, pg. 16, ¶ 114, 115.

76. Dkt. No. 124, pg. 40, ¶ 325, 326.

77. *See e.g.*, Dkt. 124, pg. 38 ¶ 318 "failure to state a claim"; pg. 40, ¶ 327 "insolvency"; pg. 40, ¶ 328 "standing."

David A. Reed, Kansas City, KS, for Debtor.

## ORDER SUSTAINING RAC ACCEPTANCE EAST LLC's OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

Arthur B. Federman, Bankruptcy Judge

Creditor RAC Acceptance East LLC ("RAC") objects to confirmation of Debtor LaRita Jean Harris's proposed Chapter 13 Plan. In essence, the Debtor asserts that her rent-to-own-furniture agreement with RAC is a disguised security agreement, rather than a lease, and is proposing to pay RAC's claim as a secured claim over the life of her plan, as opposed to assuming or rejecting the lease pursuant to 11 U.S.C. § 365. For the reasons that follow, I conclude that the Lease–Purchase Agreement is a true lease and, therefore, RAC's Objection to confirmation will be SUSTAINED.

The facts are undisputed. On August 1, 2015, the Debtor executed a Lease–Purchase Agreement with RAC regarding a king size bed, mattress, and mattress pad (collectively, the "Bedroom Furniture"). The Agreement stated that the "cash prices" for the bed frame and box springs were $1,597.99; the mattress was $999.00; and the mattress pad was $99.00; for a total "cash price" of $2,695.99.

Under the terms of the Agreement, the Debtor agreed to rent the Bedroom Furniture for a minimum four-month term. She agreed to a rental payment of $224.99, plus sales tax of $18.79 per month, for a total monthly payment of $243.78. The Agreement provides that the Debtor may obtain ownership of the Bedroom Furniture by making 36 payments, totaling $8,776.08 in rent and sales tax. Alternatively, the Agreement provides that the Debtor may obtain ownership of the Bedroom Furniture by exercising an "Early Purchase Option" under the Agreement. The Early Purchase Option requires the Debtor to pay any past due lease payments and other charges, plus an amount shown on a chart based on the payments made thus far.

The Debtor made four monthly payments prior to filing her Chapter 13 bankruptcy case on December 18, 2015. The Debtor is proposing to treat RAC as a secured creditor holding a claim for a purchase money security interest in the Bedroom Furniture, which was purchased within a year prior to filing, and thus entitled to payment "in full" under

§§ 1325(a)(5) and 506. However, the Debtor is proposing to use the "cash price" of $2,695.99 as the amount of the secured claim, and is proposing to pay interest at the Chapter 13 rate. As a result, the Debtor is proposing to pay RAC $75 per month over 36 months. RAC objects, asserting that, if the Debtor intends to keep the Bedroom Furniture, RAC is entitled to treatment as an unexpired lease pursuant to § 365.

Thus, confirmation of the Debtor's proposed Plan turns on whether the Agreement is a lease or a disguised security agreement. If it is a disguised security agreement, then RAC's objection to confirmation should be denied. If it is a lease, then, as RAC asserts, § 365(b)(1) requires that the Plan provide that the Debtor either: (1) cure all defaults under the Agreement; compensate RAC for its pecuniary losses resulting from the defaults; and provide adequate assurance of future performance; or (2) reject of the Agreement, in which case RAC will be entitled to repossess the Bedroom Furniture and make a claim for damages against the Debtor's estate.[1]

 As RAC suggests, the existence, nature, and extent of a security interest in property is governed by state law.[2] As relevant here, the Missouri legislature has enacted legislation, known as the "Rental–Purchase Agreement law," to regulate rent-to-own transactions.[3] The statutes define a "rental-purchase agreement" as:

> an agreement between a merchant and a consumer for the use of merchandise by the consumer for personal, family, or household purposes, for an initial period of four months or less that is automatically renewable with each payment after the initial period, and that permits the consumer to become the owner of the merchandise. A *rental-purchase agreement shall not be construed to be ... [a] security interest* as defined in subdivision (37) of section 400.1–201 . . . .[4]

The statutes then set forth a number of required and prohibited provisions for rental-purchase agreements.[5]

However, the parties agree, as do I, that the answer to the question of whether the Agreement here is a true lease or disguised security agreement lies in Article 2A of the Uniform Commercial Code. Particularly, § 400.1–201(37) of the Missouri Revised Statutes provides, in relevant part:

> "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. . . .

> Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the

---

1. 11 U.S.C. § 1322(b)(7) (providing that a plan must, "subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section."

2. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *See also In re Hoskins*, 266 B.R. 154, 157 (Bankr. W.D. Mo. 2001) ("To determine a debtor's property rights, such as an interest in a lease, the bankruptcy court is required to look at state law.").

3. Mo. Rev. Stat. § 407.660 (Sections 407.660 to 407.665 shall be known and may be cited as the "Rental–Purchase Agreement Law.").

4. Mo. Rev. Stat. § 407.661(6)(f) (emphasis added).

5. *See, e.g.*, Mo. Rev. Stat. § 407.662 ("Rental-purchase agreements, in writing—prohibited provisions—required provisions") and § 407.663 ("Advertisements, requirements").

consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

(1) the original term of the lease is equal to or greater than the remaining economic life of the goods,

(2) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(3) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(4) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.[6]

Although the Debtor emphasizes the facts-of-each-case directive, the parties agree, and the statute is clear, that the threshold question is whether the lessee has the option to terminate the agreement at any time. The Honorable Jerry W. Venters has interpreted § 400.1–201(37) as follows:

[Section 400.1–201(37)] suggests that a transaction creates a lease if the obligation to pay for the right of possession is subject to termination, and this suggestion has been consistently adopted as the proper interpretation of § 400.1—

201(37). "[T]he existence of an absolute obligation by the lessee to purchase the rental property is the touchstone in determining whether a security interest was intended." The reasoning behind this interpretation of § 400.1–201(37) is straightforward. A security interest, by definition, secures an obligation. In the absence of an obligation, there can be no security interest.[7]

The Agreement in this case unquestionably provides that the Debtor has the right to terminate the Agreement, without penalty, at any time after four months. Therefore, "[i]n the absence of an absolute obligation to pay the purchase price, the Agreement cannot be construed as a security agreement under § 400.1–201(37); it is a lease."[8]

The Debtor relies primarily on *In re James*,[9] a case applying Kansas' version of § 400.1–201(37). There, the contract at issue provided that, in order to terminate before the end of the full term, the debtors were liable to pay any unpaid monthly payments due under the contract (as is the case here), *plus* a $500 early termination fee, and "the amount of the adjusted lease balance that exceeds the Vehicle's realized value at termination."[10] "Realized value" was defined as "the price we [the lessor] receive for the Vehicle at disposition; the highest offer we receive for the disposition of the Vehicle; or the fair market value of the Vehicle at the end of the Lease

---

6. Mo. Rev. Stat. § 400.1–201(37)(A).

7. *In re Dutzel*, 2008 WL 5157679 at *2 (Bankr. W.D. Mo. Oct. 17, 2008) (quoting *In re Morris*, 150 B.R. 446, 448 (Bankr.E.D.Mo. 1992)).

8. *Id.* The Debtor agrees that Judge Venters came to the correct conclusion under Missouri law in *Dutzel*, but asserts that that case is distinguishable because it involved a trus-

tee's attempt to avoid the lease as an unperfected security interest, rather than confirmation of a debtor's Chapter 13 plan, which is the situation here. I see no basis to distinguish the application of Missouri law based on the procedural context of the case.

9. 2014 WL 5785316 (Bankr. D. Kan. Nov. 4, 2014).

10. *Id.* at *4.

term."[11] In other words, in order to "terminate" the lease there, the debtors were essentially obligated to pay the full value of the vehicle at issue. Because of that, the Court concluded that the contract was not subject to termination by the lessee and thus went on to discuss the second prong of the analysis under the statute.

As stated, that is not the case here because the Debtor can terminate the Agreement at any time after the first four months, with no penalty. All she has to do is return the Bedroom Furniture (or arrange for RAC to pick it up) and pay any unpaid rent up to that point. *In re James* is, therefore, distinguishable.

Because the Agreement here is terminable, I need not discuss the remaining factors under § 400.1–201(37).[12] The Agreement is a true lease.

That said, the Debtor cites *In re Turner*,[13] an unpublished decision by Judge Venters, in which a vehicle lessor was seeking relief from the stay. The debtor in that case had proposed a plan treating the lessor's claim as a secured claim. After concluding that the vehicle lease agreement was a true lease under § 400.1–201(37) because it was terminable by the debtor, Judge Venters summarily held that, in order to keep the vehicle and obtain confirmation of her plan, the debtor would have to propose adequate protection payments of $120 per month (even though the lease payments had been $49 per week). The Debtor here asserts that despite the conclusion that the Agreement is a lease, *Turner* stands for the proposition that she can propose a plan essentially treating RAC as having a secured claim. However, the *Turner* decision does not mention § 365 at all, perhaps because the lessor did not raise it in the context of stay relief. As a result, I conclude that *In re Turner* is of little persuasive weight on the issue of whether the Debtor must treat RAC's claim in accordance with § 365.

Finally, the Debtor does not assert that the Agreement here violates any of the requirements or prohibitions of Missouri's Rental–Purchase Agreement Law and, indeed, it is very clear as to the Debtor's rights and obligations under it. Rather, despite the Agreement's clear termination right, the Debtor asserts that the financial realities of the situation make the Agreement non-terminable "as a practical matter" because the Debtor would not be able to recover the equity of her investment in the property if she does terminate. But that is true of any rent-to-own lease. In essence, the Debtor asserts that rent-to-own agreements such as the Agreement here unfairly target unsophisticated people who lack access to credit. However, as RAC points out, they do serve some benefit to people who do not qualify for traditional financing. Either way, the Missouri legislature has approved rent-to-own leases, albeit with many consumer protections, and since the Debtor does not argue that the Agreement is unenforceable under Missouri law, it must be treated as an unexpired lease in her Chapter 13 Plan.[14]

---

11. *Id.* at *4 n. 44.

12. *Accord, In re Wade,* 501 B.R. 870, 874 (Bankr. D. Kan. 2013) (holding that, because the agreements at issue could be cancelled at any time by the lessee surrendering or returning the property without penalty, they were "true leases" under Kansas law, and the court need not discuss the remaining factors)

13. 2011 WL 2490600, Case No. 11–41588 (Bankr. W.D. Mo. June 22, 2011).

14. *Accord, In re Porterfield,* 331 B.R. 480 (Bankr. S.D. Fla. 2005) (holding that rental-purchase agreement of household property was a true unexpired lease under Florida's UCC, which had to be assumed or rejected pursuant to § 365); *In re Rembert,* 293 B.R. 664 (Bankr. M.D. Pa. 2003) ("There are nu-

ACCORDINGLY, RAC Acceptance East LLC's Objection to Confirmation of Chapter 13 Plan is SUSTAINED. The Debtor is ORDERED to file an amended plan treating RAC's claim as an unexpired lease within 21 days.

IT IS SO ORDERED.

merous bankruptcy cases involving state statutes similar to the RPAA that cover rental-purchase agreements. Many of them hold that the rental purchase agreements are 'true leases' and not security agreements. Other bankruptcy courts hold that rental-purchase agreements are neither true leases or security agreements, but are peculiar creatures of consumer financing sufficiently executory to fall within § 365 of the Bankruptcy Code that governs executory contracts. No bankruptcy court applying a state rental-purchase agreement statute found that such agreements were security instruments.") (citations omitted).